## WELCH'S HEIRS v. WELCH'S ADM'R.

1. A gift to a trustee for the use of a married woman, does not create a separate estate in her to the property. To have that effect, it must appear from the conveyance itself, that it was the intention of the donor, or testator, that the marital rights of the husband should not attach upon the property.

2. Slaves cannot be emancipated by will in this state.

3. A husband, after the death of his wife, is not entitled to her distributive share of an estate.

4. An agreement entered into by the husband of one distributee, with the rest, that four slaves directed to be emancipated by the will of the testator, should not be considered as assets of the estate, is not such an act of reduction into possession, as would authorize the husband to receive his wife's portion, as a distributee, after her death, of the slaves so attempted to be set free.

Error to the Orphans' Court of Dallas.

In 1832, the last will and testament of Thomns Welch, deceased, was admitted to probate, and Samuel Bowden and Martin McElroy were appointed administrators with the will annexed. They collected the money due the deceased in his lifetime, paid off the debts and legacies, and divided the residuum amongst the distributees, with the exception of four slaves. The shares, or proportions to which the female distributees were entitled were paid to their husbands, but no final settlement was made with the orphans' court, nor were administrators discharged from their trust by any order of the court. The division was made amongst the distributees by consent.

In November, 1847, the court proceeded to make a final settlement of said estate, and on proof of the payment of the legacies, the division of the residuum, (except the four slaves that will be noticed hereafter,) to the husbands of the female distributees, declared the estate settled, and discharged the administrators.

The children of Elizabeth Cunningham, who was the daughter of the testator, objected to the decree, and contended that the payment of the legacies, and the share of their mother in the residuum, to J. H. Cunningham, was not a good payment, because the legacy given to her, and her interest in the residuum, was the separate property of their mother, E. Cunningham, and to which their father had no right or title ; and therefore the payment made to him, although made in the lifetime of their mother, did not discharge the administrator. To sustain this position, they rely on a deed executed by Thomas Welch, in the year 1815, and also the will.

The deed purports to convey certain slaves, and some furniture, and cattle, to the trustees, in trust, that they will permit the grantor, Thomas Welch, during his life time, to hold, possess, and enjoy said property with its increase and shall permit the said grantee to sell, dispose, or otherwise use, all, or any part thereof; replacing in room of any that may be disposed of, or sold, other property of equal value ; and from

and after the death of Thomas Welch, then the said trustees shall stand seized and possessed of said property, to the use and benefit of my daughter, Elizabeth Welch, and her issue, and shall thereupon convey the same to her and her issue forever; with the reservation, that if the said Elizabeth Welch should die without issue, then the property should return and be divided between other daughters of the grantor.

In the will it is recited, that the grantor had disposed of the property conveyed by the deed, and being possessed of property equal in value, and in pursuance of the powers reserved to the said testator, by said deed, and in fulfilment of his obligations under said deed, he willed to his daughter, Elizabeth Cunningham, formerly Elizabeth Welch, a quarter section of land; also, three slaves, with the increase of the females, "all to her and her issue."

The will also contains a clause, that if any one of his daughters should die, and have no issue alive, then her share should be divided between his other daughters. Another clause of the will provides, that "after the payment of the debts of the testator, the residuum should be divided between his daughters, subject to the rules laid down for the descent of the specific legacies.

The testator also desired, that four of his slaves should be liberated from bondage and set free.

It was agreed between the husbands of the distributees, that these four slaves should not be considered assets of the estate, and the slaves were permitted to go at large, until after the death of Mrs. Cunningham. After the death of Mrs. C., one of the slaves left the State, and the husband of Mrs. C., and the other distributees, made a division among themselves of the residue of the slaves. This division, so made, the court held, discharged the administrators from liability to the children of Mrs. Cunningham, to which they filed an exceptive allegation.

These matters are now assigned as error.

G. W. GAYLE, LAPSLEY and WATTS, for plaintiffs in error. The questions all arise on the bill of exceptions, and the

plaintiffs in error say, that under the facts disclosed, the administrators were liable for the negroes, which were intended to be emancipated. We arrive at this conclusion by assuming these positions:

1. The husband is not entitled to the *choses in action* of his wife, not reduced to possession at her death. Johnson's Adm'r v. Wren, 3 Stew. 172; Mayfield v. Clifton, 3 Ib. 375; Bibb v. McKinley, 9 Porter, 636; Andrews & Bros. v. Jones, 10 Ala. R. 400.

2. This unascertained interest of the wife, in the slaves belonging to the estate, which remained undisposed of at her death, was a *chose in action* of the wife—the will being absolutely void as to the intended emancipation. Trotter v. Blocker, 6 Porter, 269; Harrison v. Harrison, 9 Ala. 481, § 9; Spann v. Stewart, 1 Hill Ch. Rep. 326; Schuyler v. Hoyle, 5 John. Ch. Rep. 196; Blount v. Birtland, 5 Ves. 515; Wildman v. Wildman, 9 Ves. 174; Baker v. Hall, 12 Ib. 497.

3. The agreement of the husband in the lifetime of his wife, that the slaves might be freed and not administered, was void for want of consideration. And for that reason ineffectual to bar the right of the wife's representatives in the *choses in action.*

At Mrs. Cunningham's death, the persons entitled were changed from herself and husband to her infant children, and the administrators were bound to notice this fact, and to act accordingly. And surely this parol contract, without consideration, and at her death wholly unexecuted, cannot bar these new rights. Roper on Hus. and Wife, 225; Clancy on Mar. W. 122-3-4, *et seq.*; Bates v. Dandy, 2 Atk. 207; Barnet v. Kinaston, 2 Ver. R. 401; Johnson v. Johnson, 1 Jacobs & Walker, 472.

How can it possibly be contended that the administrators are not liable for Julia and her children, which were divided six or seven years after the wife's death?

YANCEY, for defendant in error.

The deed of 1815 became inoperative, by the exercise of powers reserved in it, up to the death of the grantor. Blakey v. Blakey's heirs, 9 Ala. 391.

The will did not revive the deed of 1815, and only reviv-

ed the deed of 1809, "as far as they [it] concerned and embraced [his] my present property."

Neither the deed, nor the will, created an estate for "the sole and separate use" of Elizabeth Cunningham. Carlton & Co. v. Banks, 7 Ala. 32.

Both the deed and the will created a life estate in Elizabeth Cunningham. Carlton & Co. v. Banks, 7 Ala. 32.

Under the will, the husband of Elizabeth Cunningham had a right to reduce to possession the property devised to her during her life, and the administrators with the will annexed, are not liable to her heirs for a delivery of such property to the husband, during the lifetime of Elizabeth Cunningham. Same authority.

The fact that Elizabeth C. was single when the deed of 1815 was made, could not exclude the marital rights of her husband, when afterwards married. Id. 32, 36.

If the trustees of the deed of 1815, became seized and possessed, at the death of Thomas Welsh, of the property devised to the said Elizabeth Cunningham, then the administrators cannot be held liable for the value of said property, on a final settlement of said estate.

If the will should be held to be void, as to the emancipation of the slaves, then said slaves, if administered upon, would fall into a general residuum of the estate, and descend by legal rules of descent. Alston v. Coleman, 7 Ala. 795; Trotter, adm'r, v. Blocker et al. 6 Porter, 306.

If the slaves to be emancipated, shall be held to be a general residuum, the husbands of the children of T. Welsh, would be the heirs at law, in right of their wives, if the property was reduced to possession by them. Clay's Dig. 168, § 2.

The husbands, being heirs at law, in right of their wives, their agreement with the administrator as to the disposition of said slaves, was such an act, as constituted a reduction to possession of the husband. Roper on Husband and Wife, 178, 221, 224; Andrews & Bro. v. Jones, 10 Ala. 400, 423-4.

An administrator cannot be made liable, on a final settlement, for the value of slaves not administered upon, under a claim of right to liberate them. They should be brought

into distribution. Reynolds's adm'r v. Reynolds's dist., 11. Ala. 1023.

Where one entitled to a distributive share of an estate dies, previous to distribution, his personal representative must be brought before the orphans' court, on final settlement. Reynolds's adm'r v. Reynolds's dist., 11 Ala. 1023.

A release by the husband, of a wife's *chose in action*, during her life, is effectual, whether for a valuable consideration or not. 1 Rawle's Rep. 279; Hall v. Alexander, 9 Ala. R. 222.

The sale of a wife's property not reduced to possession, by the husband, is the exercise of such a dominion over it as is a constructive reduction to possession; and it will free the property from her legal survivorship. Andrews & Bro. v. Jones, 10 Ala. 424; 4 Rawle, 474-5.

DARGAN, J.—It is unnecessary to examine, whether the deed of 1815, has any influence on the property; or whether Elizabeth Cunningham was entitled under the deed, or the will, to the property bequeathed by the will; for whether she could claim under the will, or the deed, at her option, her rights are precisely the same. We might be inclined to hold, that her title is derived from the will, and the character and extent of that title limited by the deed, as referred to by the will; but it is unnecessary to examine any other question than the single one, had Mrs. Cunningham a separate estate in the property, under either instrument, upon which the marital rights of her husband would not attach? And it is very clear that she had no such separate estate; for admitting the property could be said to be vested in the trustees, in trust for Mrs. Cunningham, without further words, showing that it was for her separate use, the marital rights of the husband would attach upon it, and a delivery, or payment to the husband, would discharge the administrator.

In the case of Lumb v. Milne, 5 Vesey's Rep. 521, it was held, that the mere fact of vesting an estate in trustees, in trust for the benefit of the wife, did not create in her favor a separate estate; and in the case of Lamb v. Wragg and Stewart, 8 Porter, 76, this court, after a review of many of the authorities on this question, affirmed the doctrine of the

case from 5 Vesey, and held, that a deed conveying slaves to a husband as trustee in trust for his wife, did not give the wife a separate estate. It may be laid down as the correct rule of law, that the conveyance of personal property to a *feme*, whether *sole* or *covert*, or whether direct to her, or through the intervention of trustees, in trust for her, will not create in her favor a separate estate, on which the marital rights will not attach. But in order to create a separate estate in her favor, to which the husband by virtue of his marriage will acquire no rights, the conveyance must clearly show, that such was the intention of the grantor, donor, or testator. In this case no such intention is shown, neither in the deed of 1815, nor in the will; therefore, the delivery of the property to Joseph Cunningham, the husband of Elizabeth, in her lifetime, was a good payment of the legacy bequeathed to her, and he was entitled to receive her share of the residuum, if paid during her life, unless he had been restrained for the purpose of making a provision in her favor.

2. The next question arises from the clause of the will, by which the testator attempted to liberate four slaves, Flora, John, Julia, and her child. The testator expressed a strong desire to free them from bondage, and requested his executors to have them set free, as soon as it could be done. It appears that the administrators applied to the legislature to have them liberated, but the legislature refused to do it. The administrators did not take possession of them as assets, or a portion of the estate, but by an agreement between the administrators, who were the husbands of two of the distributees, and the husbands of the other distributees. These four slaves were permitted to go at large, and the administrators exercised no control over them. John, one of the slaves, is gone to Arkansas. After several years, the administrators and the distributees divided the others, with their increase, as slaves, and one was allotted to Joseph Cunningham, the husband of Elizabeth, but she was then dead, and no one has administered on her estate.

Although the testator expressed a strong desire, that the four slaves named in his will, should be liberated from bondage, yet it is well settled, that they were incapable of receiving their liberty by way of a legacy, or bequest, and as they

have not been liberated, they are still slaves, and are a portion of the testator's estate. See the case of Carroll and wife v. Brumby, administrator of Wallace, at this term. But as no disposition of them was made by the terms of the will, they are liable to be administered according to law, and consequently to be distributed amongst the distributees of the testator, and hence it is necessary to ascertain if they have been so administered.

After the death of Mrs. Cunningham, the distributees divided the slaves (except John, who had gone to Arkansas) amongst themselves, and in this act of division, the administrators participated, in right of their wives; but the share, or proportion, to which Mrs. Cunningham was entitled, was permitted to be received by Joseph Cunningham, after her death. Was he entitled, as her husband, after the death of his wife, to receive her proportion of these slaves? This question has been settled by the repeated decisions of this court. In the case of Bibb v. McKinley & Hopkins, 9 Port. 636, this court held, that a husband, as such, could not maintain a bill in equity, after the death of his wife, to recover an undivided portion of her father's estate, bequeathed jointly to several legatees; because her rights under her father's will, was a mere *chose in action*, and were not reduced to possession during the coverture. So in the case of Clopton v. Mayfield, 3 Stew. Rep. 375, the same rule is affirmed, and it is laid down as the law, that to entitle the husband to the *choses in action* of his wife, they must be reduced to possession during the coverture. The right, then, of Mrs. Cunningham to her share in the distribution of the four slaves, with their increase, not having been reduced to possession by the husband during the coverture, remained at her death a mere *chose in action*, and the only person entitled to recover it, is her administrator. Neither her husband, or next of kin, without administration, can demand it, therefore the administrators have not fully administered, at least to the extent of her interest in those slaves. But it is contended, that the assent, or agreement of Cunningham, in the lifetime of his wife, that said slaves should not be treated as assets, discharges the administrators from all liability as to them. That could not be so, for this agreement was, or must have been

canceled, when the administrators and Cunningham divided Julia and her children amongst themselves as slaves. But this agreement, which appears to be a mere parol agreement, that these slaves should not be considered as a portion of the estate, cannot operate as an assignment of the wife's interest in them. The slaves could not take the benefit of this agreement under our law, and consequently they still continued slaves subject to the administrators, and liable to distribution, and which have never been administered. The orphans' court, therefore, erred in rendering a decree of final settlement, and discharging the administrators, for the legal representative of Mrs. Cunningham was not before the court, nor has the share of Mrs. Cunningham in those slaves been administered. The decree is therefore reversed, and the cause remanded.

CHILTON, J., not sitting.