# *Ex parte* Grimball.

### *Petition for Prohibition.*

1. *Removal of suit to Federal Court.*—Under the twelfth section of the judiciary act of 1789, as also under the act of Congress of 1867, a suit could not be removed from the State to the Federal court unless all the parties on one side are residents, and all on the other side, non-residents of the State in whose court the suit is brought.

2. *Same.*—Whether the act of Congress of July 27th, 1866, as to the removal of suits from State to Federal courts, is repealed by the later act of March 3d, 1875, is not decided ; but the court treats the present application as though both statutes were in force.

3. *State Court, power and duty of; on petition for removal.*—The jurisdiction of the State court is not *ipso facto* ousted by the filing of the petition and bond for removal; the court must examine the petition, in connection with the cause to which it relates, to determine whether the cause and the petitioner's connection with it, entitle him to the removal,—and it is not until this is ascertained that the jurisdiction of the State court ends.

4. *Case; what not removable.*—M. died leaving lands and personalty here, managed by C. trustee, under the will, with authority to pay over the net income of the share of testator's daughter to her, or to her husband if she married. She married G., who resides in New York, and died domiciled there, intestate and childless. The trust property was claimed by Mrs. G.'s brothers and sisters under the will; also by R. as Mrs. G.'s administrator, who claimed adversely to them; G. claimed the property under the laws of New York. C., the trustee who resided in Alabama, filed his bill in the

[Ex parte Grimball.]

State court against G., R. Mrs. G.'s administrator, and her brothers and sisters, and others for a settlement of the trust, and for instructions how to dispose of the trust estate.   G. was the only non-resident, and he made application to have the cause removed to the Federal court,—*held:*

1. There is no act of Congress which authorized the removal.

2. G. can obtain his distributive share of the wife's personalty, only through R., the administrator, who is an indispensable party, and the controversy of G. is not only with him, but also with G.'s other co-defendants, who claim adversely both to G. and the administrator, all of whom are residents of Alabama except G.; hence the case is not "a controversy which is wholly between citizens of different States, and can be fully determined between them," and can not be removed under the act of Congress of 1875, upon the petition of one of several defendants; and not being a suit to restrain or enjoin G., and his controversy being really with G.'s co-defendants mainly, which can not be disposed of without their presence, the cause is not removable under the act of Congress of 1866.

PETITION for a prohibition to the Chancery Court of Madison county.

Prohibition to chancellor is sought, to restrain him from proceeding in suit of Cruse, trustee, against Moore, Grimball, Rison as administrator of Mrs. Grimball, and others, on the ground that Grimball, a non-resident, had petitioned for the removal of it under act of Congress into the Circuit Court of the United States.

The property involved was Mrs. Grimball's portion of the estate of her father, David Moore, who died many years ago in Alabama.   The trustee held, invested, and managed, it under provisions in the will, with authority to pay, only the net income, to testator's daughter, or to her husband, if she should marry.   She was married to petitioner, who resided in New York, and a few months afterwards died childless and intestate.   The trust property is in Alabama, and is claimed by Mrs. Grimball's brothers and sisters, under the will, and adversely to them by Rison, the administrator in Alabama of her estate, and by Grimball under the law of of New York, the State of her domicile.   Cruse filed his bill against them all, and some others, for a settlement of his trust and instructions how to dispose of the trust estate. Grimball is the only non-resident.   The chancellor overruled his petition.

D. P. LEWIS, for petitioner.—1. Where a petition is presented to the State court, asking a removal of the cause, and the same is in conformity with the act, the aid of which is sought, and no objection is made to the form or substance of the same, and the bond is not objected to as to its form or sufficiency, then the State court "can proceed no further in the suit," until the same is remanded by the action of the

Circuit Court of the United States to the State court.—Act of Congress of March 3d, 1875, § 3; 2 Abbott, U. S. Practice, pp. 49, 50, 51, edition of 1877, and cases cited in notes; *Insurance Co. v. Dunn,* 19 Wall. 223–4; *Fisk v. U. P. R. R.,* 6 Blatchf. 379, 80–1–2–3; *Shaft v. Phenix Ins. Co.,* 67 N.Y. 546; The Reporter, Oct. 23, '78, p. 515; *Gordon v. Longest,* 16 Peters, 104; id. 622–3; *Ex parte Hill v. Confed. States,* 38 Ala. 431, 450, 460–1; Dillon Removal, § 15, pp. 66, 67; *French v. Hay,* 22 Wall. 244; *Prigg v. State of Penna.* 16 Peters, 608; *Sturgis v. Crowningshield,* 4 Wheat. 193; *City of New York v. Miln,* 11 Peters, 102; *Gibbon v. Ogden,* 9 Wheat. 204; *Slocum v. Maberry,* 2 Wall. 1, 12; Constitution U. S. art. 6; 5 Cranch. 348; 5 How. 295; 4 Wheat. 316; 18 Howard, 331.

2. A critical examination of the allegations of the bill, of the petition, and of section three of the act of March 3, 1875, will show that this is a controversy wholly between citizens of different States, involved in the suit, and that one of the defendants *actually* interested in such controversy is the petitioner, and that the State court transcends its jurisdiction in proceeding further in the same.

3. If one of the questions to which the judicial power extends, under the constitution and laws of the United States, *"forms an ingredient in the cause,"* the case is within the judicial power, although other questions of law or fact be involved.—1 Abbott's Pr. (ed. of 1877) 38, (199); *Osborn v. Bank U. S.,* 9 Wheat. 738; *Mayor v. Corp'n,* 6 Wall. 252; *Taylor v. Rockafeller,* The Reporter, August 21, 1878, p. 226.

MANNING, J.—The acts of Congress for the removal of causes from the courts of the States to those of the United States, require on the part of the judges of either government who may have to consider and act under them, candor and good temper. A jealousy of jurisdiction too susceptible of alarm and resentment, is apt to hurry those under its influence into error. The institutions of both governments are established for the good of all: and it is the right of all to have them preserved and upheld in the performance of their respective proper functions. When, therefore, cases arise in which the question to be decided is, whether the cognizance of them belongs to the State courts or the Federal courts, it is the dictate of patriotism, as well as of law, that jurisdiction shall be cheerfully declined by those to which it does not pertain, and exercised without offensive arbitrariness, by those to whom it does belong. According to the Su-

preme Court of the United States, through the late Chief-Justice CHASE,—" It may be not unreasonably said that the preservation of the States and the maintenance of their governments, are as much within the design and care of the constitution, as the preservation of the Union and the maintenance of the national government."—*Texas v. White,* 7 Wallace, 700. To the high tribunal which takes this enlarged view of our complex political system, it belongs—ultimately to determine the meaning and proper operation of the statutes under consideration; and its interpretations will probably be as satisfactory as they will certainly be binding on all judges.

The present case does not come under that portion of section 12 of the judiciary act of 1789, which relates to the removal of causes, or under the act of 1867 on the same subject. It is settled that a suit that may be removed under either of these, must be one in which all the parties on one side of it must be residents, and all those on the other side, non-residents of the State in which the suit is brought. Such is not the situation of the parties in this cause.

The only other two statutes on the subject are those of July 27th, 1866, and March 3d, 1875. In the opinion of some judges and lawyers of eminence, the former of these was repealed by the latter. But a contrary conclusion was expressed on the circuit, in the summer of 1877, by Justices BRADLEY and MILLER of the Supreme Court of the United States; by the former in the case of *Girardey v. Moore et al.,* in Georgia, and by the latter in *The Board of County Commissioners v. Kansas Pacific R'y Co. et al.,* in Colorado. See 5 Cen'l Law, J. 78 and 102. And we shall consider the concurrent opinions of these distinguished judges as establishing that the act of 1866 was not repealed.

According to this act, when a suit is brought by a citizen of one State in a court of that State, " against a citizen of the same and a citizen of another State," the suit may be removed by the latter, " if, so far as it relates to him, it is brought for the *purpose of restraining or enjoining him,* or is a suit in which there can be a final determination of the controversy, so far as concerns him, *without the presence of other defendants as parties to the cause.*"—Rev. Stat. of U. S., § 639. In *Girardey v. Moore et al.,* the suit was brought to restrain Moore, a mortgagee, who resided in another State, from foreclosing his mortgage of the property involved; and in the opinion of the presiding justice, his co-defendants were not necessary parties so far as the controversy with him

was concerned: Wherefore the cause was retained in the Federal court, under the authority of the act of 1866. But in the present suit, there was no purpose to restrain or enjoin Grimball, the non-resident party: And it is obvious from the bill, and results from his own averments in his petition, that the controversy he claims the right to wage, is a controversy against some of his co-defendants, and not against the plaintiff. The act of 1866 may, therefore, be dismissed from further consideration.

The act of 1875, in section 2, provides that, when, in the suit to be removed, " there shall be, a controversy which is *wholly between citizens of different States,* and which can be fully determined *as between them,* then either one or more of the plaintiffs or defendants, actually interested in such controversy, may remove said suit into the Circuit Court of the United States for the proper district."—Acts of 1874–75, 471, § 2.

In reference to the first section of this act, defining the cases of which " the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States," Justice BRADLEY'S opinion, expressed in the case above mentioned, is, that " the jurisdiction given to the Circuit Court is as broad as the judicial power" vested by the constitution in the general government: And to that, he gives the largest extent ever conceded to it by any other judge, and a larger one than some others consider consistent with the constitution. But in regard to the second section of the act of 1875, the same learned justice ruled, that if in a suit brought in a State court, there be a controversy between citizens of different States, but " some of the plaintiffs and defendants are citizens of the same State, the removal must be sought by all the defendants," and that it is only when " all the plaintiffs on one hand, and all the defendants on the other are citizens of different States," that any one or more of either less than all, can effect the removal. Only in the latter case, would there be in the language above quoted from the second section, " a controversy which is wholly between citizens of different States, and which can be fully determined between them." " But in either case " (says Justice BRADLEY) " it is the suit that is removed, and not a part of the suit."

With this, the opinion of MILLER, J., in *The Board of Co. Comm'rs v. Kansas & Pac. R'y Co. et al.,* (*supra*), appears to agree. And he refused to remand that cause to the State court, for the reason that, in his opinion, the real contro-

versy, when unnecessary parties to the suit were set aside, was wholly between persons who resided in different States, and the real litigation was between them, notwithstanding the plaintiffs were compelled to place the corporation in whose favor the bill prayed relief, and of which they were only stockholders, in the position of a defendant in the suit, because, (as was alleged) the faithless and fraudulent directors who had charge of it, would not allow it to appear as plaintiff.

We have referred to these cases especially, because they go further than any others we have seen, in asserting and exercising authority to remove causes pending in State courts into the courts of the United States. Do the rulings and reasonings in them embrace a case like the present? Let us examine it, only so far as to understand the object of the suit and the relation of the parties.

Cruse, the complainant, had been appointed trustee, in 1874, (after the death of a former trustee,) of the property involved. It consisted of realty and personalty valued, in Grimball's petition, at about $100,000. The trust was created by the will of Moore, the testator, and covered the respective shares of all his daughters in his estate. But Cruse was trustee of his daughter Catherine's portion only. In that capacity, he was required to keep the possession, care and management of the trust estate under his own control, and to pay over only the net income thereof to her, or, if he thought it prudent so to do, to her husband, if she should marry. She married Mr. Grimball in November, 1876, and died childless and intestate in July, 1877. Whereupon conflicting claims are set up to the trust funds and property, viz., on behalf of Mrs. Grimball's brothers and sisters, as entitled to it by the provisions of the will, by Rison, as administrator for the payment of debts and distribution, and by petitioner Grimball.

The great responsibility imposed on Cruse as trustee, is not lessened by the demand that he shall account to so many claimants. He is by no means a mere stakeholder, as the petitioner styles him. On the contrary, he has a profound interest in the cause. He must account therein for the trust estate and the management and proceeds of it, since it came to his hands. He must show that he has not, by lack of diligence, failed to obtain all the property and effects belonging to that estate; and this has induced him to make the executrix of his predecessor, also, a defendant; and the decree is

to be rendered against himself, the trustee and plaintiff. In courts of equity, persons in the situation of this trustee, and liable to be sued as defendants, may initiate, as plaintiffs, the proceedings for settlements to eventuate in decrees against themselves, which when satisfied, will exonerate them. But a plaintiff in such a case will be held to a responsibility no less strict than if he were pursued as a defendant. It behooves him, therefore, to see to it, that all persons to whom he may be answerable for the manner in which he has executed his trust, be made parties to the cause in which he accounts, so that when the judgment of the court shall be satisfied, he will be forever discharged. And, of course, for the same reason, it is important to him, that the court rendering the decree shall have jurisdiction.

Where, then, must this suit be prosecuted? All the parties "actually interested," or claiming to be so, are citizens of Alabama and reside in Madison county, except Mr. Grimball. He lives in New York. And if he be successful in his contention that the gift to his wife was not of a mere life estate, but of the realty in fee simple, and of the entire property in the personalty,—still the personalty can not in any event be delivered by the trustee to him. Before him comes the administrator, who also is a citizen of, and according to our statutes, must reside in Alabama. Mr. Grimball can be entitled to make claim no other wise than as a distributee; and though he be, as we understand him to claim that he is, the sole distributee of his wife's personal property, yet he can derive that here in question or such as shall remain after administration, only through the administrator. To him the law commits it, and confers on him the entire transmissible ownership, legal and equitable, that was in Mrs. Grimball when she died, for the purpose of enabling him to get in all the assets, discharge all legal and equitable claims against the same, and make distribution of the residue. Therefore, also, no receipt or voucher that Grimball could execute to Cruse for such property or money, would avail against the claims of Rison, the administrator. Indeed, Mr. Grimball was not perhaps a necessary party to Cruse's suit at all. The right of the administrator, being a continuation in him of that of Mrs. Grimball, rests upon the same foundation as that upon which Mr. Grimball's claims are based, to-wit, that there was in her a transmissible ownership. The maintenance of this, is essential to the administrator's title; and being next in succession to Mrs. Grimball, his intestate, he is an indispensable party to the controversy. And if he

should fail faithfully to assert his rights as administrator against the claims of Mrs. Grimball's brothers and sisters, and thereby not obtain property he was entitled to, he would be answerable for such neglect hereafter, to her creditors or distributees. But neither Mr. Grimball nor any other distributee has a right to the possession now of any part thereof.

In our opinion the persons who are the most material, if not the only indispensable parties on either side of the controversy, are those who reside in this State. None of them join Mr. Grimball in his petition for a removal of the suit; and there not being in it a "controversy which is wholly between citizens of different States and which can be fully determined between them," it is not such a suit as, under the act of 1875, can be removed upon the petition of one only of the several defendants.

But it was further very strenuously contended in this cause, in support of the application to us for a prohibition to the chancellor, that upon the filing of a petition in conformity with the act of Congress and offering a bond for costs, as is prescribed, by a person sued in a State court, the jurisdiction of that court ceases, and it must "'proceed no further in such suit,' until the same is remanded by the action of the Circuit Court of the United States to the State court;" that is, although the record or papers of the suit in the State court clearly show (as in this instance), that it was not removable under the act, and the Federal court would, therefore, have to repudiate and remand it, yet the State court could not look beyond the petition and bond, (if they were in proper form and the allegations of the petition sufficient,) into the papers of the suit, to determine for itself, whether it was or not, such an one as the law made transferrible from the State court, and of which its jurisdiction could be thus taken away.

We are not unmindful of the evils that may ensue from the exercise of a clashing jurisdiction by the courts of the two governments over the same parties and causes; and we think it the bounden duty of those tribunals to do all they properly may, to prevent such consequences. But, that a State court shall be paralyzed into impotency by the mere presentation of the petition and bond, however well drawn and executed, of a party sued therein, and be made incompetent to proceed further, even though the record and papers on file show that the suit is not embraced within any of the acts of Congress on the subject of removal, is, it appears to us, an indefensible position. Why should a petition

be presented at all, if no response is to be made to it, and no consideration given to the matter of it? According to the argument, it were fitter that the petition should be in form, as well as effect, a notice to the court that the person filing it demanded that its interference with him and his affairs cease, and that the suit by which he had been brought there be transferred to another jurisdiction. Did the senators representing the several States of the Union vote the passage of an act intended to be so injurious to the authority and dignity of the tribunals by which the laws of those States are enforced, justice administered, and peace and order maintained?

The acts of Congress particularly define the character of the suits which may be removed and the relation thereto and toward the other parties, of the persons to whom the privilege of removal is conceded. And it is enacted that if, *in any such suit*, a party " *entitled to remove it*," files his petition and bond, &c., the State court shall proceed no further. It is only when those conditions exist that the court is ousted by law of its jurisdiction. By yielding it in any other case, a judge would not be obeying the law, but submitting to the demand of an individual. And whether he is doing the one or the other he can not know, without so far looking into the case, as to ascertain if it be removable or not, according to the statute. To do this, is a duty he owes to the State that created his court and conferred its powers, coupled with the obligation to employ them in administering justice, in all cases within its cognizance, brought before it—except such as may be transferrible and transferred by superior authority to another jurisdiction.

The importance of making such an examination is forcibly impressed by an accidental circumstance in the present case. By a mere oversight, the petition of Grimball, while purporting to set forth the names of all the parties to the suit of Cruse, (a statement needful to the end in view,) omits any mention of Rison, the administrator; who, as we have seen, is an indispensable party to the cause, more important as such, than the petitioner himself, to a final determination of it. The omission was evidently a mistake, for Rison's name and office and position as defendant, are mentioned in the bond that was filed with the petition. But how easy would it be if the views of petitioner's counsel are correct, for one whom a little delay might enable to commit a great fraud, (against which the statute provides for no security in the bond it prescribes,) to avail himself, in order to do so, of

[Ex parte Grimball.]

this process of removal in almost any case, by merely filing in court his unverified petition, (no oath to it is required,) and an inadequate bond. By the time the cause should be remanded, all the means available to the plaintiff of obtaining satisfaction, may have been put beyond his reach.

It is not necessary, however, to discuss this matter further. We understand our view to be the same as that of the Supreme Court of the United States. It is supported by the opinion of the chief-justice in *Railway Co. v. Ramsey*, 22 Wall. 328; and the recent case of *Insurance Co. v. Pechner*, 95 U. S. Rep. 183, is confirmatory of the like conclusion. In the latter case, a removal was prayed of a suit brought in a State court of New York, which court, regarding the petition as not showing a sufficient cause for the transfer, refused to allow it, and proceeded to trial and judgment. This was affirmed in the New York court of appeals; whence the cause was carried by writ of error to the Supreme Court at Washington; and that tribunal concurring in the opinion of the courts of New York, affirmed their judgment.—See, also, *Gold Washing & W. Co. v. Keyes*, 96 U. S. 199.

In these instances, it is true, the defect appeared on the face of the petition itself. But every such petition makes the case it relates to, by reference to it, a part of the petition, and can not be properly understood without some knowledge of the case. The decisions cited are, therefore, in our view, authorities in support of the proposition that the State court must examine the petition, and if necessary look into the case to which it relates, in order to ascertain whether it and the petitioner's relation to it, are such that he is entitled to the removal he prays for. If he is, the court "has no discretion and is compelled to permit the transfer to be made." *Railway Co. v. Ramsey, supra.* If he is not, its jurisdiction remains unimpaired.

We do not extend our opinion beyond the questions that arise in the cause before us. The chancellor's ruling in it we think was correct; and it follows that the writ of prohibition applied for must be refused.

BRICKELL, C. J., not sitting.