# Grimball *v.* Patton.

*Bill in Equity by Trustee, asking Construction of Will creating Trust, and Instructions as to Rights of Claimants.*

1. *Codicil.*—A codicil is part of the will, and the two must be construed together as parts of one instrument. If the codicil expressly revokes, or is in irreconcilable conflict with any clause of the will, that clause must be treated as stricken out, and the codicil stand as the last exponent of the testator's intention; but the codicil revokes and supplants the will only to this extent.

2. *Bequest of absolute estate, with limitation over on death without issue before reaching twenty-one years of age.*—Under a bequest of an estate in fee to each of the testator's children, with these words superadded, "If

any of my children should die *before they arrive at the age of twenty-one years, leaving no legal issue*, then the part of the said child or children so deceased shall revert back to my surviving child or children and their heirs," the limitation over is dependent on the happening of the two specified events—death before the age of twenty-one years, and leaving no issue—and the estate of a child who dies without issue after having reached the age of twenty-one years is not defeated.

3. *Bequest of absolute estate, with such limitation, and provision by codicil for settlement to separate use of married daughters, with remainder to their children.*—Where the will contained a bequest of an estate in fee to each of the testator's children, with a limitation over on the death of any one without issue before reaching the age of twenty-one years, and a codicil was added to the will in these words: · "It is my will and desire, that the share of my estate which is intended for my daughters shall vest in, and be held by my executors, or the survivors, in trust for the sole and separate use and benefit of my said daughters respectively; and should they, or either of them, marry, then said shares to be for their sole and separate use, free from the control or management of their husbands, and not in any manner to be liable for their debts—the net income only to be allowed by my said executors for the comfortable support and maintenance of my said daughters and their families; and on the death of my said daughter or daughters, *leaving children*, the share of each daughter to be equally divided among her children;" *held*, that the codicil only changed the legal estate of a married daughter into an equitable estate, excluding her husband's marital rights, and, possibly, limiting her right to charge more than her net annual income, but did not otherwise limit or affect the interest which she took under the will, or the interest of her surviving brothers and sisters in her share, on her death without issue after having attained the age of twenty-one years.

4. *Continuance of trustee's title.*—When property is held by a trustee, under testamentary provisions, for the sole and separate use and benefit of a married woman, to the exclusion of the marital rights of the husband, the trust is dissolved by her death, and the equitable estate becomes a legal estate in those who succeed to it.

5. *Descent of real estate; governed by what law.*—The descent of real estate in Alabama, owned by a person who dies, intestate, in New York, where he resided, is governed by the laws of Alabama.

6. *Statutory and equitable estates of married women.*—The several statutory provisions in reference to the estates of married women apply only to estates held under the statutes, and not to equitable separate estates held under wills or deeds.

7. *Husband's rights in wife's equitable estate.*—Where lands are vested in a trustee, for the sole and separate use of a married woman, to the exclusion of the marital rights of her husband, he can not become tenant by the curtesy, when there is no issue of the marriage; and his marital rights not having attached during the coverture, they can not attach after the death of the wife.

8. *Domestic and foreign administrators.*—Administration having been granted here on the estate of a married woman who died in New York, where she resided with her husband, such administrator is entitled to collect all the personal assets, and the rents of real estate, and holds them for the payment of debts and expenses of administration, and for purposes of ulterior administration; and the testamentary trustee of her estate must account and settle with him, although her surviving husband has also taken out letters of administration in New York.

9. *Cross-bill; when premature, and not germane.*—Where a trustee for a married woman files a bill after her death, asking the construction of the will creating the trust, and the determination of the rights of the several claimants of the property; and the decree of the court holds the

heirs entitled to the lands, and the domestic administrator entitled to the personal property for the purposes of administration; a cross-bill by the surviving husband, who was also the foreign domiciliary administrator, asserting his individual rights to the personal property under the law of the foreign domicile, is prematurely filed, and is not germane to the purposes of the original bill.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on February 8th, 1877, by Samuel R. Cruse, as trustee of the estate of Mrs. Catherine Grimball, deceased, formerly Miss Catherine Moore, against the several persons who asserted claims to the property—namely, her surviving brothers and sisters, her surviving husband (John Grimball, who was also the administrator of his deceased wife by appointment made by the proper court in New York), and John L. Rison, as the administrator of said estate by appointment of the Probate Court of Madison county; and sought a judicial construction of the will creating the trust, and the instructions of the court as to the rights of the respective claimants, that he might account with them for the property belonging to the trust estate, and make a settlement of his trust.

Mrs. Grimball was a daughter of Dr. David Moore, deceased, and her trust estate was held under the provisions of his will. Dr. Moore died in Madison county, Alabama, during the year 1845, possessed of a large estate, and leaving a widow, two sons, and two daughters; and his last will and testament was duly admitted to probate, in said county of Madison, on October 6th, 1845. The will was dated March 12th, 1845, and contained the following (with other) provisions: "*Item* 1st. I desire and direct my executors to pay all my just debts out of my estate, and that the remainder of my estate entire, of real, personal and mixed, of whatever kind soever, be divided between my dearly beloved wife, Martha L. Moore, and my children which are now living, or that may be born after my death begotten of her, which may be living at the time of division, to be made in equal portions, and of equal value as near as may be each one's share." "*Item* 5th. My dear wife, Martha L. Moore, shall have power to draw her entire share, which is to be an entire child's part, at the expiration of any one year, to be allotted to her, under the order of the court, on her application. But she shall have the power, if she remains single, and prefers it, to let her part of my estate remain in joint stock until the oldest living child shall arrive at lawful age, if a male, or until she may arrive at the age of eighteen, if a female child, and should marry; in which event, then a division shall take place, and their respective shares shall be allotted to them respectively; or, should my wife marry, then a division shall

[Grimball v. Patton.]

be made, allowing her part of my estate to be set apart for her use, and delivered up by said executors, and the balance kept together until distribution be made among my children respectively. If any of my children should die before they arrive at the age of twenty-one years, leaving no legal issue, then the part of said child or children so deceased shall revert back to my surviving child or children and their heirs; and if the child or children so dying shall leave legal issue, then, and in that event, their respective portions of my estate shall descend and be allotted to such issue of their body so left at their death."

There was a codicil annexed to the will, dated April 5th, 1845, in these words: "It is my will and desire, that the share of my estate, real, personal and mixed, or of any description whatsoever, which is intended for my daughters, shall vest in and be held by my executors above mentioned, or their survivors, in trust for the sole and separate use and benefit of my said daughters respectively; and should they, or either of them, marry, then said shares to be for their sole and separate use, free from the control or management of their husbands, and not in any manner to be liable for their debts—the net income only to be allowed by my said executors for the comfortable support and maintenance of my said daughters and their families; and on the death of my said daughter or daughters, leaving children, the share of such daughter to be equally divided between her children. *Provided*, that my said executors may allow to the husbands of my daughters the net annual proceeds of their respective shares, if they think it prudent to do so."

The testator's estate was divided, pursuant to the terms of the will, in 1855, between his widow and his four children; the share alloted to his daughter Catherine being set apart, and placed in the hands of trustees. Cruse, the complainant in the bill, was appointed trustee, by the register of said Chancery Court, on the selection of the said Catherine, on the 28th December, 1874. On the 16th November, 1876, said Catherine was married to John Grimball, who was then a citizen of New York; and she and her husband continued to reside in the city of New York, from that time until her death, which occurred on the 17th July, 1877. She died intestate, never having had any children, and being over the age of twenty-one years. On the 19th December, 1877, letters of administration on her estate were granted by the Surrogate's Court in New York to her surviving husband; and he filed an answer and cross-bill in the cause, asserting his rights to the property, and claiming that, under the laws of New York, he, as surviving husband, was entitled to all the personal property. Rison, resident administrator, claimed the property for the purposes of administration;

[Grimball v. Patton.]

and answers were filed by the other defendants, asserting their claims under the will.

On final hearing, on pleadings and proof, the chancellor rendered a decree as follows: "It is therefore ordered, adjudged, and decreed by the court, that under the will of the said Dr. David Moore, his sons, Samuel H. and David L., having attained the age of twenty-one years, became invested absolutely with the shares to them bequeathed by said will; that the daughters of said testator took nothing under said will, but that the shares intended for them under said will by said codicil vested absolutely in his executors as trustees, the net income to be applied for their use and support; and the said Catherine having died leaving no children, the share invested in the complainant as her trustee reverted to the estate of the original testator, to be distributed between his heirs under the laws of Alabama; and it further appearing that no estate was vested by said will in said Catherine Grimball, it is ordered, that the petition of John Grimball to be made a party as administrator of the said Catherine, be, and the same is hereby dismissed."

The appeal is sued out by Grimball, who here assign as error each part of the chancellor's decree adverse to his claims; and there are cross assignments of error by the administrator.

D. P. Lewis, and R. B. Tunstall, for appellant.—(1.) By the terms of the will, Mrs. Grimball took an absolute estate in fee simple, subject to be divested and defeated by her death without issue before reaching the age of twenty-one years; and by the codicil, the character of this estate being changed by the interposition of trustees, the estate itself could only be defeated by her death leaving issue, or surviving children. As she died without issue, the estate was not defeated by the contingency provided for in the codicil; and as she had attained the age of twenty-one years, it was not defeated by the contingency provided in the will. An absolute estate being given by the will, the codicil does not operate as a revocation, except so far as it is expressly stated to be so intended, or so far as it is absolutely inconsistent with the provision in the will.— Westcott v. Cady, 5 Johns. Ch. 343; 1 Jarman on Wills, 165; Brant v. Wilson, 7 Cowen, 56; 8 DeGex, M. & G. 368; 1 Redf. Wills, 362; Mason v. Smith, 49 Ala. 73; Murch v. Marchant, 6 Man. & Gr. 813; 14 Beavan, 587; 3 Ohio St. 369; Quincy v. Rogers, 9 Cush. Mass. 291; 1 Wms. Exr's, 199, 6th Amer. ed. Here, the will and codicil are not repugnant to each other, but present the not uncommon case of an absolute gift to a daughter, with a subsequent direction for a settlement upon her; in which cases, the rule is well established, that the quantity of the estate is not lessened, but merely the use limited; and when the terms

[Grimball v. Patton.]

of the settlement have been complied with, and a settlement is no longer necessary or practicable, the absolute gift remains unchanged.—Jarman on Wills, 785, 4th Amer. ed.; 2 Redf. Wills, 268, 2d ed.; *Hulme v. Hulme*, 9 Simons, 644; *Billing v. Billing*, 5 Sim. 232; *Campbell v. Brownrigg*, 1 Phil. Ch. 301; *Gulick v. Gulick*, 25 N. J. Eq. 328; 12 C. E. Greene, 498; *Alston v. Davis*, 2 Head, Tenn. 268; *Sherrod v. Sherrod*, 38 Ala. 542; Co. Litt. 206 *a*; *Drummond v. Drummond*, 26 N. J. Eq. 234; 5 Vesey, 207; 3 Beavan, 343; 2 Jac. & W. 279.

(2.)   The purposes of the trust having been accomplished, the trust ceased on the death of Mrs. Grimball without children. *Comby v. McMichael*, 19 Ala. 747; *Powell v. Glenn*, 21 Ala. 458; *Schaffer v. Lavretta*, 57 Ala. 14; 100 Mass. 529; 66 Law Library, 83; 2 Myl. & K. 57; 10 Sim. 254; Schouler's Dom. Rel. 194.

(3.)   The rights of the surviving husband are not excluded or abridged by the codicil; the exclusion being limited to the coverture, and there being no limitation over.—Hill on Trustees, 667, 4th Amer. ed.; 1 Bradf. Sur. Rep. (N. Y.) 64; Lewin on Trusts, 642, 680; Bisph. Eq. 119, § 107; Perry on Trusts, § 668; 23 Beavan, 450; 2 Jac. & W. 279; 1 Phill. 301; 24 Penn. 253; 6 Humph. 129; 14 B. Mon. 152; *Stewart v. Stewart*, 7 John. Ch. 245; 5 Madd. 408; *Rochon v. Lecatt*, 2 Stew. 429; 33 Md. 325; 11 Har. Penn. 29.

(4.)   By the law of the domicile, which is the law of New York, the personal property of a married woman, dying intestate and without issue, goes to the surviving husband.— *Whitaker v. Whitaker*, 6 Johns. 117; 7 Johns. Ch. 246; 22 N. Y. 113; 24 N. Y. 378; 47 N. Y. 351.

HUMES & GORDON, and WALKER & SHELBY, *contra*.

STONE, J.—The codicil is part of the will, and they must be construed together as one instrument. If the codicil expressly revoke any part of the will, then the part revoked must be treated as stricken out. If any part or clause of the codicil be irreconcilably repugnant to a clause or clauses of the will, then, to that extent, the codicil supplants the will, and the latter becomes inoperative. But it supplants the will only to the extent the repugnancy is irreconcilable. This, on the principle, and only on the principle, that the codicil is the later expression of the testator's will, and being variant from the provisions of the will, the presumption obtains that the testator's purpose and will had undergone a change. It is said in many of the cases, that a codicil, duly executed, is a republication of the will, and draws to it the execution of the will, as of that date, with the exception of the rule of construction above noted.

Hence, they are to be construed as one instrument—as collectively the last will of the testator.—*Hitchcock's Heirs v. U. S. Bank*, 7 Ala. 386, 437; 1 Jar. on Wills, 3 Amer. ed., marg. p. 160; 1 Redf. on Wills, 288–9. Says the author last cited : "It is a clear principle of the English and American law, that all codicils, however numerous, are to be regarded as parts of the will, and all, together with the will, are to be construed as one instrument."—*Ib.* 352, and note 22 on page 291.    Chancellor KENT's language— *Westcott v. Cady*, 5 Johns. Ch. 343—is: " I shall take it for granted, as a clear and settled rule, that a will and codicil are to be taken and construed together, in connection with each other, as parts of one and the same instrument."    In *Mason v. Smith*, 49 Ala. 71, is a correct statement of the rules of interpretation.    We need not announce whether the rules were correctly applied in that case.—*Neff's Appeal*, 48 Penn. St. 501 ; *Simmons v. Simmons*, 26 Barb. 68, 75.

In the 5th item of the will it is said : "If any of my children should die before they arrive at the age of twenty-one years, leaving no legal issue, then the part of said child or children so deceased shall revert back to my surviving child or children and their heirs."    It is contended for appellees, that the true intent and meaning of this clause were, and are, that the surviving child or children should take, no matter when any child should die, " leaving no issue."    The argument in support of this conclusion is, that the dying " without issue " must have been the controlling condition, on which testator intended the gift over to take effect, and there could be no reason for the gift over, if the child died without issue before reaching the age of twenty-one years, that would not apply with equal force, if such child should so die after reaching that age. This argument asks us to imply the words " *or after*," immediately succeeding the word " *before*," in the clause copied.    We can perceive no reason for such implication.    If the intention contended for had existed, it would have been much more easily and naturally carried out, by entirely omitting the words, " before they arrive at the age of twenty-one years."    This, on the solution we are asked to adopt, is the mode of expression most likely to suggest itself and be employed.    Why mention the epoch of the children's prospective majority, if it was to exert no influence in the dispositions of his property?  We can imagine cogent reasons, why a testator would wish to direct the secondary devolution of his property, in the event the primary objects of his bounty should be cut off in immature years, while he may have desired, if they reached their majority, they themselves should determine the direction it should take.    But we do not consider this line of conjecture open to us.    The testator has expressed one possible event, on the happening of

[Grimball v. Patton.]

which the property devised and bequeathed was to revert to his estate, or other children.  There were many other possibilities, which should have suggested themselves, in the frame alike of the fifth item of his will, and of the codicil.  We have no right to suppose they did not occur to him.  But, it is immaterial whether they occurred to him or not.  If they did, then he intentionally omitted all provision to meet them.  If they did not, then he had no testamentary intention in regard to them. Either view is fatal to the appellees; for, in the construction of wills, we must carry into effect the intention of the testator, as shown in a fair interpretation of the language employed. We are forbidden to conjecture what he should have done, or what he would have done, if it had occurred to him.—*Sherrod v. Sherrod*, 38 Ala. 537; *Hollingsworth v. Hollingsworth*, 65 Ala. 321.  Expressly directing that the property, in one possible event, should go to the other children, and omitting all direction in other possible events arising under the fifth item of the will and under the codicil, the implication is that this was intentional.  *Inclusio unius, est exclusio alterius.*

Another argument: The first separable clause of the codicil is in this language: "It is my will and desire, that the share of my estate, real, personal and mixed, or of any description whatsoever, which is intended for my daughters, shall vest in, and be held by my executors above mentioned, or the survivors, in trust for the sole and separate use and benefit of my said daughters respectively."  This clause is followed, and correctly followed, by a semi-colon.  If the codicil had stopped here, there could have been no differences of opinion in its construction. It would not have varied the *quantum* of the estate.  Its only effect would have been to change a legal fee into a trust, or equitable estate in fee.  No one would contend that this clause, standing alone, cut the interest the daughters took under the will down to a life-estate.  The quantity of estate the daughters would have enjoyed, whether they married or not, would have remained a defeasible fee, secured to them under the 5th item of the will; nothing more, nothing less.  But the codicil continues: "And should they, or either of them, marry, then said shares to be for their sole and separate use, free from the control or management of their husbands, and not in any manner to be liable for their debts—the net income only to be allowed by my said executors for the comfortable support and maintenance of my said daughters and their families.  And on the death of my said daughter or daughters, leaving children, the share of each daughter to be equally divided among her children."  This clause, in its entirety, is made to depend on the marriage of the daughter.  "Should they, or either of them, marry," is its express condition.  On the hap-

[Grimball v. Patton.]

pening of the first named of these events—marriage of the daughter—the use and enjoyment was cut down to the net income of the property. And, if it were necessary, we would probably hold, that the effect of the codicil was, to limit contingently the power of the daughters to charge anything more than the net income of their respective shares. This, because testator intended, if his daughters married and left children, their estates should be cut down to a life-tenancy, and the *corpus* of the devise and bequest should be preserved for such children. But he made no provision for any other contingency. The use and enjoyment were limited by the codicil, because the daughter married. The fee was not defeated, or cut down, because she left neither child or children.

The case of *Doe, ex dem. v. Marchant,* 6 Man & Gr. 813, is a strong authority in support of the views expressed above. The opinion of the court was rendered by TINDAL, C. J., and will be understood from the syllabus of the case, as follows: "A. devises the remainder in fee in all her lands (upon certain events which had taken place) to B., in clear and unambiguous terms. By a codicil which A. directed to be annexed to, and taken as part of her will, after reciting that she had become possessed of certain freehold property since the date of her will, she gave to [trustees for] B. an estate for life in her freehold property, 'instead of the devise and bequest contained in the will,' with remainder to such child or children as should be living at the time of B.'s decease, in fee; or, if none such, then with remainders to the brothers and sisters of B. (with the exception of one brother by name) who should be living at the time of her decease, in fee; but the codicil did not go on to dispose of the ultimate fee, in case the intermediate remainders should, as they eventually did, fail to take effect: *Held,* that the limitation of the remainder in fee to B. by the will, must still be considered as a subsisting limitation, as being a disposition thereof in the will unaltered by any substitution in the codicil." The case of *Robertson v. Powell,* 2 Hurlst. & C. 762, opinion by Pollock, C. B., is to the same effect. Now, the facts of those well considered cases furnish a much stronger argument in favor of an entire change and substitution of testamentary intent, than do the facts of the case in hand. Yet, because the codicil failed to dispose of the ultimate fee, it was held that it must be controlled by the unsupplanted clause in the will.—*Larrabee v. Larrabee,* 28 Vt. 274; 3 Ohio St. 369.

We hold, that the will of Dr. Moore gave an absolute title to each legatee, and the codicil had no other effect than to qualify the daughter's right of enjoyment during life, with a limitation over, contingent on their leaving children at their death. Neither that contingency, nor the one provided for in

the fifth item of the will, having happened, Mrs. Grimball at her death owned the absolute equitable fee in her lands and the entire beneficial interest in the personalty.   She died intestate, a married woman, over the age of twenty-one years, childless, a resident of the State of New York, and leaving her husband surviving her.   She owned both personal and real estate, the latter being in the State of Alabama.   Her death terminated the functions of the trustee, appointed and deriving his authority under the codicil; and her lands became a legal fee in those entitled to the inheritance, and her personal estate was alike dissolved of the testamentary trust.—*Comby v. Mc-Michael,* 19 Ala. 747; *Powell v. Glenn,* 21 Ala. 458; *Schaffer v. Lavretta,* 57 Ala. 14.   The descent of the real estate is regulated by the laws of Alabama.

The bill avers that the lands of which Mrs. Grimball died seized, "belong to said trust estate;" that is, the trust created by the will of Dr. David Moore.   We understand this to be an averment, that all the lands owned by Mrs. Grimball at the time of her death, accrued to her under the will of her father. These lands, by the terms of the codicil, were placed in trust "for the sole and separate use and benefit of my [testator's] said daughters respectively; and should they, or either of them, marry, then said shares to be for their sole and separate use, free from the control or management of their husbands, and not in any manner to be liable for their debts—the net income only to be allowed by my said executors for the comfortable support and maintenance of my said daughters and their families."   These are clear, unmistakable words of exclusion of the marital rights under all our rulings, and constitute an equitable separate estate.—*Short v. Battle,* 52 Ala. 456, and citations.

Lands or other property thus held are not governed, or in any way affected, by any of our statutes securing to married women their separate estates, nor by any statutory law relating to separate estates.—*Pickens v. Oliver,* 29 Ala. 528; *Cowles v. Morgan,* 34 Ala. 535; *Reel v. Overall,* 39 Ala. 138; *Short v. Battle, supra.*

Being an equitable separate estate, there are two reasons why Mr. Grimball, surviving husband, takes no estate or interest whatever in her real estate thus situated.   *First:* He is not tenant by the curtesy, for there was no issue of the marriage, born alive. - *Bibb v. McKinley,* 9 Por. 636; *Bishop v. Blair,* 36 Ala. 80; *Cheek v. Waldrum,* 25 Ala. 152; *Rochon v. Lecatt,* 1 Stewart, 590.   *Second:* His marital rights never having attached to this property during Mrs. Grimball's life, by reason of the words of exclusion in Dr. Moore's will, they can not, under our rulings, attach after her death.—*Randall v. Shrader,* 20 Ala. 338; *Mayfield v. Clifton,* 3 Stew. 375; *Bibb v. Mc-*

[Grimball v. Patton.]

*Kinley,* 9 Por. 636; *Andrews v. Jones,* 10 Ala. 400, 422; *Welch v. Welch,* 14 Ala. 76, 83; *Vanderveer v. Alston,* 16 Ala. 494; *Lockhart v. Cameron,* 29 Ala. 355, 363; *Stewart v. Stewart,* 31 Ala. 207, 216; *Bradford v. Howell,* 42 Ala. 422. The lands belong to the heirs at law, brothers and sister of Mrs. Grimball, as tenants in common; subject, of course, to the right of her personal representative to subject them to her debts, should her personal estate prove insufficient.—*Calhoun v. Fletcher,* 63 Ala. 574, and authorities cited.

There being an administrator of Mrs. Grimball's estate rightly appointed in this State, the personal assets within this State must, in the first instance, be paid to him. The law, in its own policy, and for wise and necessary purposes, devolves the legal title on him, and he alone can maintain suits to reduce the personal assets and choses in action to possession. He is entitled to them, first, for payment of debts in this State, if there be any, and for the payment of the expenses of administration. Second, he is entitled to them for the purpose of ulterior administration.—*Ex parte Grimball,* 61 Ala. 598; *Welch v. Welch,* 14 Ala. 76; *Gardner v. Gantt,* 19 Ala. 666; *Lockhart v. Cameron,* 29 Ala. 355; *Broughton v. Bradley,* 34 Ala. 694; *Fretwell v. McLemore,* 52 Ala. 124. There are exceptional cases, in which chancery has decreed distribution without local administration; but the averments in this record do not bring this case within that rule.—See the authorities collected in *Fretwell v. McLemore, supra.* It results, that Cruse, the trustee, must account to, and settle with Rison, the administrator, for all the personal assets that belong to the trust, including the land rents which accrued before the death of Mrs. Grimball. The real estate which came to Mrs. Grimball under the will of her father, together with the rents which have accrued since her death, is the property of her brothers and sister, unless needed in whole or in part, and claimed by the administrator, for the payment of debts.—*Calhoun v. Fletcher,* 63 Ala. 574.

We are asked, in the present case, to go beyond what is above declared, and to determine to whom the *residuum* of the personal property will go, after the payment of debts and expenses of administration. We do not understand the trustee's bill as raising this question, nor can we perceive that he has any interest in its solution. His bill was filed for instructions in the administration of the trust, and for an authoritative determination of the persons to whom he must account, and with whom he must settle. His duty and interest extend no farther. We have answered these requests, and have determined all the questions in which he can have any interest. The cross-bill of Mr. Grimball, however, asserts that he, as surviving husband, is entitled to the personal estate of which Mrs. Grimball died the

[Grimball v. Patton.]

owner. This question can not arise in Cruse's settlement of the trust, and can only be considered when Rison, the administrator, comes to close his administration. There is nothing in the record which shows that his administration is ready for settlement. The very opposite is shown, for the administrator has not obtained possession of any of the assets. The cross-bill was prematurely filed, because, in any event, it failed to show any present right to relief. Neither is the cross-bill germane to the purposes of the original bill, which, as we have seen, looks alone to the administration and settlement by Cruse of the trust estate in his hands. There is nothing in the frame of the present suit which will authorize Rison to settle his administration therein. The purpose and prayer of the cross-bill can only become material, when Rison settles his administration; and hence we say, the relief prayed in the cross-bill is not germane to the scope and purpose of the original bill.

On the assignments of error by Grimball, the decree of the chancellor, dismissing his petition, and disallowing all claims attempted to be set up in the cross-bill, is affirmed. On the assignments of error by Rison, and by the heirs at law of Mrs. Grimball, the decree of the chancellor is reversed, and a decree here rendered, in accordance with the views above expressed. Let the costs of appeal in this court, and in the court below, be paid equally by appellant, Grimball, and by Cruse out of the trust fund.

BRICKELL, C. J., not sitting.