# Schaffer *et al. v.* Lavretta *et al.*

*Bill in Equity to set aside Conveyance of Land.*

1. *Trustee; estate of, in trust property.*—Under the statute of uses (27 Hen. VIII), which is part of the common law of this State, as modified by subsequent statutes, a trustee ordinarily takes no greater estate than is needed to support his trust; and the extent of the legal interest the trustee takes in the estate is to be determined, not by words of inheritance or otherwise, but by the object and extent of the trust upon which the estate is given; and when its objects are fully accomplished, the title of the trustee ceases, the entire title, legal and equitable, passing by operation of law to the *cestui que trust.*

2. *Same.*—Prior to the year 1852, P. conveyed to a trustee, "his heirs and assigns forever," certain realty in trust for the sole use and benefit of P.'s wife, "for the term of her natural life," allowing her the use of the property, &c., and providing that at her death the trustee should hold for the sole use and benefit of such child or children as said P. should have by his wife, and to their heirs forever. The conveyance recited that its object was to make some sure and permanent provision for the support of the wife, and authorized the trustee upon her request to sell the lands and hold the funds for the same use and purposes the lands were held. The wife died in 1860, leaving two daughters by her marriage with P., and the trustee settled his accounts and turned over the property to the daughters and their husbands. Afterwards, one of the married women being then a minor, they, by joint deed, executed by themselves and their husbands, sold and conveyed to H., and they afterwards filed their bill to have the conveyance annulled. *Held:* The purposes of the trust having been executed, the title passed to the daughters, and their conveyance, joined in by their husbands, passed the legal title to H.

3. *Conveyance; what voidable.*—A conveyance of her statutory estate by a married woman, while yet an infant, joined in by the husband, is voidable as to her; and a suit brought within a reasonable time is a proper mode of avoiding it. What is a reasonable period within which to disaffirm, must depend upon the facts and circumstances of the particular case.

4. *Want of title in one complainant; when fatal to relief as to all.*—Where two persons claim by a joint title the entire realty in controversy, and one has no title, the bill must be dismissed as to both; but the dismissal should be without prejudice as to the complainant having title.

[Schaffer et al. v. Lavretta et al.]

APPEAL from Chancery Court of Mobile.

Heard before Hon. HURIOSCO AUSTELL.

The opinion states the case. Defendant Giovanni Lorenzo Lavretta is the person called in the opinion and generally known as *Lawrence*.

E. S. DARGAN, for appellant.—Mere acquiescence by one infant, for a period short of that necessary to create a bar under the statute of limitations, will not prevent him from repudiating his deed and recovering his property.—*Tucker v. Mordecai*, 10 Peters, 65; 17 Wendell, 44.

This is especially true of a married woman. Under the terms of the trust deed the legal title is outstanding in Lafargue, and those claiming by conveyance from the married women hold only an equitable title. The equity of the married women is greater than this, and must prevail over it. Having only an equitable title, there is no standing for the defence of *bona fide* purchaser, &c.

C. W. RAPIER, *contra*.—Lafargue was a mere naked trustee. He had executed the trust, and turned over the property, and settled with the *cestui que trusts*, and thereupon the legal as well as the equitable title vested in them. 19 Ala. 747; 16 Ala. 414. The deed of the infant married woman was not void; it was *voidable* merely.—24 Ala. 420. She was bound to disaffirm in a reasonable time, otherwise ratification will be inferred.—*Kline v. Beebe*, 6 Conn. 494; 3 Verm. 353; *Thomason v. Boyd*, 13 Ala. 141; 14 Ill. 162.

Under our statute an infant has three years after reaching majority to bring suit. Ought not this period to be considered reasonable time? There is much longer delay than that in this case.

MANNING, J.—Appellants, two married daughters of the late Foloe Pinta and his wife Marie Victorine, having by the death of their mother in 1870, come into possession of the lot in controversy, on the south side of Dauphin street in Mobile—one of them in 1862 and the other in January, 1863—jointly with their respective husbands, sold and conveyed the property for cash in Confederate currency, to Molloy & Horgan, who afterwards tore down the inferior store-house then on the lot and built a large one three stories high in its stead; and having used and occupied the property until the year 1873, they sold it to defendant Lawrence. Appellants filed their bill of complaint in this cause in Jan-

uary, 1874, against Lawrence, and Molloy, and Horgan, and Alexander Lafargue, who was trustee of the property under the deed made by their father for the benefit of their mother,. through which it came to them, and against their respective husbands. The bill alleges the premises and that they had received no benefit from the price paid by Molloy and Horgan. It avers also that complainant Helen, in January, 1863, "under the earnest entreaty and solicitation of her then husband, John Paul Lazies, and by his authority and control over her, and contrary to her will," signed together with him a deed of conveyance of the property to Molloy and Horgan, and that the other complainant "Eleanor, and her husband Edward Bercy, on the thirteenth day of July, A. D. 1862, made and executed a conveyance to said Molloy and Horgan . . . under the authority of her husband and contrary to her will . . . she being then a minor under the age of twenty-one years."

The bill prays that these conveyances be decreed void and cancelled, and for general relief.

It also, in a former part, sets forth that the property in controversy came to them by a trust deed of it made many years ago, before the adoption of the Code of 1852, by their father, to "Alexander Lafargue, in trust; *first*, for the use of Marie Victorine Pinta, his wife, for and during the term of her natural life, and *after her death*, in further trust for the use of the children of said Foloe, by his said wife," and that they are the only children of said Foloe and Marie Victorine.

A demurrer having been overruled by the late chancellor, the case was heard on bill, answers, decrees *pro confesso*, and evidence, by his successor, and the bill was dismissed.

1. No case is made showing that execution of the conveyance of either of appellants was obtained while she was under *duress*, or by means thereof. It is insisted, however, that the legal title to the property was at the time of the sale, and still is, in Lafargue as trustee: that, therefore, Lawrence, the purchaser from Molloy and Horgan, has only an equity; and that complainants derived no benefit from the payment of Confederate currency to their husbands for the property. Wherefore, they also have each an equity, older and superior to that of Lawrence. Without discussing this last proposition, let us inquire whether it is true that the legal title remains in Lafargue.

2. The statute of uses (of 27 Henry VIII), one of the most important enactments of our English forefathers, framed to-

effect a release from the vexatious shackles of a very artificial and intricate system of rules, for entangling and tying up land titles, was adopted "before the emigration of our ancestors to America, is applicable to our situation and not inconsistent with our institutions and government, . . . . and therefore constitutes a part of the common law of Alabama." *Horton v. Sledge*, 29 Ala. 496; *Carter v. Balfaur's Administrator*, 19 Ala. 820. It was supplemented by our territorial act of 1812, to give effect to certain forms of conveyance which were founded upon the statute and invented by lawyers to facilitate the transfer of lands.

According to the doctrine of trusts, as modified by this statute, a trustee takes, ordinarily, no greater estate than is needed for the support of the trust which he is to administer. Mr. Perry, in his work on the subject, referring to a large number of authorities, states the result of them as follows: "The extent or quantity of the estate taken by the trustee, is determined not by the circumstance that words of inheritance in the trustee are or are not used in the deed or will, but by the intent of the parties. And the intent of the parties is determined by the scope and extent of the trust. Therefore, the extent of the legal interest of a trustee in an estate given to him in trust is measured, not by words of inheritance or otherwise, but by the object and extent of the trust upon which the estate is given. On this principle two rules of construction have been adopted by courts: first, "wherever a trust is created, a legal estate sufficient for the purposes of the trust, shall, if possible, be implied in the trustee, whatever may be the limitation in the instrument, whether to him and his heirs or not." And second, "although a legal estate may be limited to a trustee to the fullest extent as to him and his heirs, yet it shall not be carried farther than the complete execution of the trust requires."—§ 312.

Among the numerous cases cited by Mr. Perry in support of these views, is that of *Comby v. McMichael*, 19 Ala. 751. And after adverting to a distinction mentioned therein, made by the English courts to depend on whether the case arises upon a deed or a will, Mr. Perry says: "In the United States, the distinction between deeds and wills in respect to the trustee's estates, has not been kept up; and the general rule is—whether words of inheritance in the trustee are or are not in the *deed*—the trustee will take an estate adequate to the execution of the trust, and no more or less."—§ 320. A number of cases are cited in support of this proposition, also.

(3)

[Schaffer et al. v. Lavretta et al.]

3.   Now, what was the grantor's object in the trust deed of Foloe Pinta to Lafargue? The deed itself declares that it was "to make some sure and permanent provision for the support of his said wife out of his estate," and it was to make a provision for her "during the term of her natural life;" after which the property was to go to their children. The grantor, therefore, instead of conveying it to her, she being his wife, gives and grants the property to Lafargue, his heirs and assigns, to be held in trust for her sole use and benefit during the term of her natural life, and then to be held in trust for the use and benefit of "such child or children as my said wife Marie Victorine may have by me, the said Foloe Pinta, and to *their heirs* forever."

The wife is to be allowed to have "the use and occupation of the said lands and premises,   .  .   .   to be possessed and managed as to her may seem proper during the term aforesaid." The deed further provides that if she should "*during* her life desire that the said lands and premises   .  .  .   or any part thereof  .  .  .   be disposed of for other property or funds, then the said Alexander, upon the written request of the said Marie Victorine,  .  . shall be fully authorized and empowered to make sale of said lands," &c., to such person or persons and on such terms as she in writing may request, and "the property or funds so acquired by the sale of said premises, shall be held in like manner, and for the same uses and purposes," as those declared of the premises originally conveyed.

The provision that at her death the property shall be held in trust for the use and benefit of "such child or children" as the wife should have by the grantor, "and to their heirs forever," gives to the children an unrestrained fee simple. There is no trust concerning it to be afterwards performed. A trustee could have no office in respect to it to fulfill. When, therefore, the property, on the death of their mother, came to them for their use, the use was executed, and the legal title passed, by operation of the statute of uses, to them. Accordingly, the trustee soon after had a settlement with complainants and their husbands, (for they were then married), and turned over the property to them in absolute possession, receiving their acknowledgment in return therefor. (The statute of uses relates only to uses in real estate.)

The legal title, and not a mere equity, was conveyed to Molloy & Horgan, and by them to defendant, Lawrence. Have the appellants any such equity as entitles them to recover the property from him?

As we have before mentioned, no case of duress is made. Neither deed to Molloy & Horgan is assailable on that account. It has repeatedly been held that a payment during the war, made and accepted in what was known as "Confederate currency"—treasury notes of the Confederate States —which were then almost the only thing in use as money— constituted a valuable consideration. No fraud in either transaction is alleged. The testimony of Daughdrill and others, and the table introduced in evidence of the depreciation at different times of the paper as compared with gold coin, show that the price paid on each occasion was a fair one at the time. And it was not the duty, or right of the purchasers, to see that the consideration paid to the husbands was properly invested for the benefit of their wives respectively. So far, therefore, as complainant Schaffer is concerned, no equity whatever in her favor is shown. She has no standing in the court.

4. The other complainant was a minor; and the conveyance executed by her and her husband, was therefore, as to her, voidable. This court has decided that if a married woman, while yet an infant, joins with her husband in a conveyance of her statutory separate estate, the deed is voidable as to her, and a suit brought within a reasonable time is a proper mode of avoiding it.—*Greenwood v. Coleman,* 34 Ala. 150.

What would be a reasonable time after the lapse of which one, who while an infant had made a conveyance, should be held to have confirmed it, must depend very much upon the circumstances of the particular case. In the present, the question is complicated with the fact that the person concerned was also and still is as a married woman *sub potestate viri.* But we do not find it necessary to make a decision on that point in this case. We need say no more than that under our law, statutes of limitation run against married women who have statutory separate estates, in respect to actions for property of which they are composed.

This suit was brought by two persons claiming a joint title to the entire real estate in controversy; and as we have above seen, one of them, at least, has no title. This is fatal to the maintenance of the bill. To enable two to sustain a bill as co-complainants, both must have an interest and be entitled to relief.—*Plant v. Voegelin,* 30 Ala. 160; *Vaughn v. Lovejoy,* 34 id. 437.

[Moore & Co. v. Meyer.]

The decree of the chancellor dismissing the bill was correct; but we think it should be modified in respect to complainant, Bercy, and, therefore, order that the dismissal be without prejudice to her right to sue alone.

Appellants must pay the costs of the appeal.