# Dunklin *v.* Wilson.

*Bill in Equity impeaching Chancery Decree, and Sale of Lands under it, on account of Fraud.*

1. *Conclusiveness of judgment.*—A party is not concluded by a judgment or decree, unless he had knowledge or notice, actual or constructive, of the suit in which such judgment or decree was rendered.

2. *Officer's return as to service of process; conclusiveness of.*—A return of the service of process, indorsed on it by the sheriff, or coroner acting in his stead, being the performance of an act in the discharge of his official duty, is presumed to have been made under oath, and, until set aside by the court, or disproved in a proper case, imports absolute verity, like any other part of the record.

3. *Same; remedy against judgment on false return.*— When the service of process, giving jurisdiction of the person of the defendant, appears on the face of the return to be regular, and a judgment or decree is thereon rendered against him, he may obtain relief against it in equity, on averment and proof that he was not in fact notified of the proceeding, and that he had a good and meritorious defense against the action; and he must state the facts constituting his defense, in order that the court may judge of their sufficiency.

4. *Same; burden of proof.*—When a defendant in a judgment or decree seeks relief against it in equity, and avers that he was not served with process, though the averment is negative in its character, the *onus* of proving it rests on him, and he must adduce evidence sufficient to overcome the sworn return of the officer. The evidence in this case examined, and held insufficient.

5. *Misjoinder of complainants.*—When several complainants unite in a bill, claiming under the same right and title, and one of them is barred, or shows no right to relief, the misjoinder is fatal to the whole suit.

VOL. LXIV.

6. *Purchase at sale under fraudulent chancery decree.*—When a decree in chancery has been obtained by fraud on the part of the complainant, and lands have been sold under it, the defendants may obtain equitable relief on account of the fraud, as against the complainant, or against any one claiming under him with knowledge of the fraud; but a purchaser at the sale, without notice, actual or constructive, of the fraud, will be protected.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 8th September, 1875, by Mrs. Julia A. Wilson and her children by her deceased husband, William A. Wilson, against Daniel G. Dunklin, Allen Colley, S. F. Gafford, and Jesse M. Armstrong; and sought to set aside and vacate, on the ground of fraud, a decree in chancery which said Colley had obtained, in a suit to which Mrs. Wilson and her children were parties, enforcing an asserted vendor's lien on a tract of land for the unpaid purchase-money; and also to set aside a sale of the lands under that decree, at which said Dunklin became the purchaser. Armstrong was joined as a defendant, on the allegation that he was in possession of a part of the land, as the tenant of Dunklin; and Gafford, on account of his connection with the frauds alleged to have been perpetrated in the former suit upon these complainants.

The land was sold and conveyed by Allen Colley to said William A. Wilson, on the 14th November, 1861, at the price of $2,520, as expressed in the deed; and Wilson delivered in part payment, as cash, four bales of cotton, and executed several obligations for the residue, payable in cotton, at ten cents per pound, on the first day of January, in the years 1862, 1863, 1864, and 1865, respectively. These dates, however, and other dates in the case, may not be stated correctly, as the transcript contains several palpable mistakes in figures, and does not furnish the means of correcting them. Wilson enlisted in the army of the Confederate States in 1863, and was killed during the war, having never returned home. On the 21st February, 1863, while Wilson was absent in the army, Colley filed a bill in equity against him, to enforce a vendor's lien for the unpaid purchase-money; but no subpoena, or notice of this suit, was ever served on Wilson. The bill in this case alleged that, soon after the filing of the bill in that case, Mrs. Wilson, acting as the agent of her husband during his absence, compromised that suit with Colley, by paying him $2,500 in Confederate treasury-notes, and agreeing to pay the costs; that Colley accepted this in full settlement and satisfaction of his debt and claim on the land, and Wilson's cotton obligations were thereby paid and extinguished; that this compromise and settlement was

[Dunklin v. Wilson.]

,made with the knowledge and assistance of Gafford, who was her confidential friend and adviser, and had become the administrator of her husband's estate; that she and her children continued to reside on the land, without interruption, "until some time in the early part of 1867, when they were greatly surprised by receiving subpœnas from the Chancery Court of said county of Butler, commanding them to appear and defend against said suit commenced by Colley as aforesaid;" that Mrs. Wilson, acting for herself and her children, immediately employed counsel to defend against the further prosecution of that suit, "but was astonished to find that a final decree had been rendered in said cause, condemning said land to the payment of said written obligations given by said William A. Wilson in payment for said land." The bill then proceeds thus: "As soon as it became known to said S. F. Gafford that she had employed ,counsel to defend said suit, he came to her, and represented that he was the party really interested in said suit, and was the actual holder of the notes for cotton given by her said husband to Colley; that he had it in his power to take the whole of said lands from her and her children, and would do so unless she withdrew all opposition to said suit, and released to him by deed her dower interest in said lands; and he proposed at the same time," if she would do this, "he would execute to her a bond conditioned to make her titles to forty acres of said land when said suit was terminated. Being illiterate, and profoundly ignorant of all matters pertaining to law, and having the utmost confidence in the said Gafford, and believing that she and her children would lose the whole of said land, unless she complied with the demands of said Gafford," she executed and delivered to him a deed of relinquishment, and he executed to her a bond for titles to forty acres of the land, as proposed; said deed and bond being made exhibits to the bill in this case.

"On the 26th October, 1868," as the bill further alleges, "another bill was filed in said Chancery Court of Butler, in the name of said Colley as complainant, and against these complainants as the legal heirs of said William A. Wilson, deceased, and against one *Ira W. Stott* as the administrator of his estate. Said bill sought to review the decree and proceedings in said former suit, and to enforce the collection of said cotton notes above described. Orators aver, that no subpœna, or other process from said court, was ever served on them, or either of them, in said cause commenced on the 26th October, 1868; and they further state, that neither they, nor any or either of them, ever had the slightest intimation, from any source whatever, that such a suit was pending in

[Dunklin v. Wilson.]

said court, until within a few days past," &c.   " On the 26th October, 1868, a subpœna in said suit was issued from said Chancery Court, directed to these complainants ; on which is indorsed the return of one *Ira W. Stott*, as coroner, and *ex officio* sheriff, a copy of which is hereunto annexed as an exhibit," &c. ; " but complainants aver that said return was false, and that [neither said subpœna] nor any other process or notice of any kind was ever given of said suit to any of them. Said suit was prosecuted to a final decree," a copy of which was made an exhibit to the bill ; and under which, it was further averred, the lands were sold on the 5th July, 1869, and were bought at the sale by said D. G. Dunklin.   The bill alleged, also, that said second suit was in fact prosecuted by said Gafford and Dunklin for their own benefit and advantage ; that they induced Colley to allow them to use his name, in ignorance of the purpose and object of the suit, by representing to him that he was liable for the costs of the former suit, and could only discharge himself from that liability by the further prosecution of the suit as they proposed ; and that Dunklin executed and delivered to Mrs. Wilson, on the 6th July, 1869, a deed for the forty acres of land described in the bond for titles given to her by Gafford.   The bill further alleged, " that said Dunklin has had the possession of said lands through all of said years since, claiming the same under his said purchase at the sale by the register in chancery ; but complainants never knew, until within the past few days, under what claim he held said lands, nor that they were sold by the register of said court." The prayer of the bill was, that the final decree of the court in the former cause, and the sale of the land under it, might be vacated and set aside ; that the register's deed to Dunklin might be cancelled under the order of the court, and also Mrs. Wilson's deed to Gafford ; that the possession of the lands be restored to the complainants, and an account be taken of the rents and profits ; and for other and further relief.

The subpœna in the former cause, as copied in the transcript, is dated the 26th October, 1868 ; and the return of service indorsed on it, as copied, which is signed " *I. W. Stott*, coroner and *ex officio* sheriff," is in these words : "Executed the within, on the 27th October, 1867 (?), by serving a copy on each defts., Julia, John W., and Middleton Wilson, personally ; executed same day, on defts. Joseph, Eliza L., Thomas J., and William A. Wilson, by serving a copy of the within upon their mother, Mrs. Julia Wilson."

Decrees *pro confesso* were regularly entered against Colley and Armstrong, who made no defense.   Gafford answered, and denied all the allegations of fraud charged against him,

[Dunklin v. Wilson.]

and the allegations as to the service of process in the former suit; insisted that he was improperly joined as a defendant, since he had no interest in the matters of controversy; and demurred to the bill, assigning several causes of demurrer, which require no special notice. Dunklin also filed an answer, denying the material allegations of the bill as to the fraud and service of process in the former suit; pleading the decree and proceedings in that case as a bar to this bill, and demurring for want of equity. The chancellor overruled the plea and demurrers; and on the evidence adduced, which it is unnecessary to state, held the complainants entitled to relief, and rendered a decree in accordance with the prayer of the bill. The overruling of the plea and demurrers, and the final decree, are now assigned as error by Dunklin and Gafford jointly.

GAMBLE & BOLLING, and HERBERT & BUELL, for appellants. 1. As between the parties to a judgment or decree, the records of a court of competent jurisdiction import absolute verity; and neither allegations of fraud, nor averments of the want of service of process, will avail to impeach the judgment or decree collaterally. The maxim applies, *Interest reipublicæ ut sit finis litium*, and private hardship must give way to public convenience.—Freeman on Judgments, §§ 133–34, and authorities cited; Bigelow on Estoppel, 145–51, and authorities cited. The two cases of *Crofts v. Dexter* (8 Ala. 767), and *Givens v. Tidmore (Ib.* 747), seem to be departures from this salutary rule, and are opposed to the weight of authority. They can not be justified on principle, nor can they be defended on the ground applicable to a settled rule of property. If, however, those cases are to be sustained, they should not be extended to permit a party to a decree to set it aside, by contradicting an officer's return of the service of process, except upon the clearest and most convincing proof, and never, after the lapse of a considerable time, and the death of the officer who made the return, upon the uncorroborated oath of the interested party himself. The evidence in this case, it is submitted, is wholly insufficient to overturn the officer's return, which is to be regarded as made on oath.— *Governor v. Bancroft*, 16 Ala. 604; *Brown v. Turner*, 11 Ala. 752; *Martin v. Barney*, 20 Ala. 369.

2. Mrs. Wilson certainly had notice, and is estopped by the former decree; and she not being entitled to relief, the suit must fail as to all the complainants.—*Hardeman v. Sims*, 3 Ala. 747; *Wilkins v. Judge*, 14 Ala. 135; 1 Brick. Digest, 750, § 1634; *Waring v. Lewis*, 53 Ala. 630.

3. Whatever may be the complainants' rights as against

Gafford, they can not set aside the sale at which Dunklin became the purchaser, and can have no relief against him. Aside from the merits of the decree in the former suit, with which he had no connection, he is entitled to protection as an innocent purchaser.

P. O. HARPER, with WHITEHEAD & LANE, *contra.*—The allegations of the bill, both as to the fraud perpetrated in the former suit, and as to the want of service of process, are fully proved; and the equity of the bill, under the facts alleged and proved, is sustained by the following authorities: *Crofts v. Dexter,* 8 Ala. 767; *Givens v. Tidmore,* 8 Ala. 747; *Martin v. Barney,* 20 Ala. 369; *Eslava v. Eslava,* 50 Ala. 32; *Stallworth v. Blum,* 50 Ala. 46.

STONE, J.—A party sought to be concluded by a judgment or decree, must be shown to have had notice or knowledge of the suit, actual, or, in some cases, constructive; and if this notice or knowledge be wanting, the record of recovery has no binding effect. This rests on the plain principle of right, that no man shall be deprived of his goods, until an opportunity has been afforded him of making defense.

Under our system, the return of a sheriff, or other ministerial officer, asserting that service was made, is evidence of the fact; becomes a part of the record, and, to that extent, will uphold the most solemn or momentous judicial proceedings. The sheriff, or, in case of his incompetency to act, the coroner acting as sheriff, is a sworn officer; and the truth of his returns is guaranteed by the sanctions of his official oath. Hence, it is held that, in the performance of duties the law casts on him, he is acting under oath. A return indorsed on process by such officer, in the line of his official duties, is a sworn affirmation that it is true; and, until set aside under the authority of the court, or disproved in a proper case, it imports verity, as absolutely as any other matter which goes to make up the records of the court.—2 Brick. Dig. 456, §§ 340, 341. In *Brown v. Turner,* 11 Ala. 752, it was said: "The court must, of necessity, give credence to the acts of its own officers; otherwise, it would be impeded, at every step, by the trial of collateral issues." In *Martin v. Barney,* it was said: "It is clear that the return of the sheriff on the writ is, in its nature, both the highest and best evidence of execution."

This evidence, however, is not conclusive, except that it can not be impeached, when it comes up collaterally and incidentally. On a direct proceeding for the purpose, its truth may sometimes be controverted. Thus, if the service

of process, giving jurisdiction of the person, appear on its face to be regular, and judgment or decree be rendered in the cause, the defendant, under our decisions, may obtain relief in equity, by averring and proving that, in fact, he was not notified of the proceedings, and that he had a good and meritorious defense to the action. Want of notice or knowledge is not enough. He must go further, and show, both in averment and proof, that he had and has a defense good in law, and in what that defense consists. The court must be put in possession of the facts; for the sufficiency of the defense is an indispensable element of the issue.—*Givens v. Tidmore*, 8 Ala. 745; *Crofts v. Dexter, Ib.* 767; Freeman Judgments, §§ 495, 498.

The tendencies of the testimony, in the present record, make a case of extreme hardship, if not oppression, on the complainants in the court below. We do not hesitate to declare our conviction, that Mrs. Wilson, acting for her absent husband, agreed with Colley, the complainant in the first and second suits, on terms of compromise and settlement, by which she agreed to pay, and Colley agreed to receive, twenty-five hundred dollars in Confederate treasury-notes, in full payment of the claim the latter held against Wilson, unpaid purchase-money of the land; that, in pursuance of this agreement, Mrs. Wilson paid Colley two thousand dollars, and that Gafford paid the residue, at the request of Mrs. Wilson. The weight of the testimony shows that Gafford was repaid this money so paid by him, in the cotton which Mrs. Wilson delivered to him. We think Gafford fails to show that Wilson's notes were traded or transferred to him. On the contrary, we think the notes were fully paid to Colley, and that the only claim he had was to have the costs of the then pending suit paid by Wilson. Saving this claim for costs, which was at that time necessarily a small sum, it was the right and privilege of Wilson, and of those standing in his right, to have the notes delivered up and cancelled. Gafford, by paying the balance of the debt to Colley, at the request of Mrs. Wilson, acquired no right to Colley's lien on the land as a vendor.—*Chapman v. Abrahams*, 61 Ala. 108. It is thus shown there was a good and valid defense to Colley's bill to enforce a vendor's lien against the lands. But the proof which establishes the existence of a defense to that suit, also shows that Mrs. Wilson had full knowledge of its existence; for she made the compromise, made the larger payment herself, and procured the residue to be made through Gafford. Why, when pressed with the effort to revive the original suit in 1867, she did not assert this defense; why she did not inform her counsel of its existence,

[Dunklin v. Wilson.]

is not attempted to be explained. Why, armed with the defense she certainly could have made good, she consented to bargain away her right to make it, for one-ninth part 'of the land in controversy, is equally unexplained in this record.

But the other material point of inquiry is, have the complainants satisfactorily proved that the coroner did not in fact serve the process on them. The proof of this averment, though negative in its character, rested on them. The only testimony offered in favor of this averment, is that of Mrs. Wilson and her two sons; all complainants in the present suit. They all swear that process was served on them in 1867, but not in 1868. The sons, being infants, testify that they did not, and do not, know the object or purport of the process that was served on them. Neither witness states any fact or circumstance, in aid of his testimony, that was calculated to impress its date on their memories. Six or seven years had intervened between the date of the coroner's return, and the giving of their testimony. In the absence of some attending circumstance to fix the attention, associated in the memory with the transaction itself, there is no subject on which human recollection is more frequently at fault, than the particular date of past occurrences. Against this uncorroborated proof is, first, the sworn return of the officer, made in twenty-four hours after the alleged service; second, that the suit was prosecuted to a final decree, and the lands sold under that decree; third, the unassailed proof of two or more witnesses, that Mrs. Wilson did have knowledge of the suit while it was pending; fourth, the undisputed fact that first Gafford, and then Dunklin, took possession of the land, and occupied it in their own right, and with the knowledge of complainants, for seven or more years, before the present bill was filed; fifth, that Mrs. Wilson not only made no defense to the suit, but actually bargained away her right to make defense, and, after the end of the suit, and sale of the land under the decree, she accepted a conveyance from Dunklin, who thereby consummated and performed the agreement by which Gafford had purchased off her right of defense. We do not think the proof in this case is sufficient to overturn the presumption in favor of the correctness of the coroner's return. To allow it to do so, would be to accord too little solemnity to judgments and decrees of the courts of the country. It is the interest of the commonwealth that there be an end of litigation; and when judgment has been pronounced which is not reversed on error, a re-trial should not be had for light or trivial causes, no matter how unjust the result may be shown to

have been, unless it can be shown that the court pronouncing the judgment was without jurisdiction, either of the subject-matter, or the person.—*Hunt v. Ellison,* 32 Ala. 173; *Pettus v. McClannahan,* 52 Ala. 55.

But there is another principle that is fatal to the present case, even if the children and heirs of Mr. Wilson are not concluded by the decree. Mrs. Wilson is co-complainant with them. As to her, there is overwhelming proof that she had full knowledge of the defense, and of the pendency of the suit, and that she bargained away her right to make defense. When co-complainants claim under the same right and title, and the record shows that one or more of them can not recover, this is fatal to the whole suit.—*Schaffer v. Lavretta,* 57 Ala. 14.

If the present record showed that the heirs are entitled to relief, and that the widow is alone estopped by the decree, we would reverse and remand the cause, that the pleadings might be amended by striking out Mrs. Wilson's name as a complainant. But, coming to the conclusion that the denial of service of process by the coroner is not sustained by the proof, the decree rendered in the Chancery Court, which this bill seeks to vacate, is as binding on the minor heirs as it is on Mrs. Wilson.—*Waring v. Lewis,* 53 Ala. 615; *Preston v. Dunn,* 25 Ala. 507.

To the suggestion that, by collusion, Gafford and Mrs. Wilson made a fraudulent agreement that the latter should not defend, and thereby may have concluded Mrs. Wilson, while it left the heirs, then minors, free to complain of the fraud, it is, perhaps, a sufficient answer, in this case, to refer to the principle settled in *Schaffer v. Lavretta, supra.* But, we may go further Relief, on that ground, could only be granted against Gafford, and those claiming under him chargeable with knowledge of his fraud. Dunklin, who holds the lands, claims that he is a *bona fide* purchaser without notice of the fraud, and without notice of the invalidity of Gafford's asserted ownership of the notes. The proof sustains this defense on his part, and there is no fact or circumstance in evidence, tending to carry such notice home to him, or to put him on inquiry.—*Freeman on Judgments,* §§ 509, 510. However the question of Gafford's liability to Wilson's estate may stand—upon which we express no opinion—we feel bound to hold that, in any aspect of the case, none of the complainants show a right of recovery against Dunklin.

The decree of the chancellor is reversed, and this court, proceeding to render the decree which the chancellor should have rendered, doth order and decree, that the bill be dis-

[Beebe v. Robinson.]

missed at the costs of the adult complainants in the court below, and in this court. This decree to take effect as of June 20th, 1877, when the cause was submitted.