# Doe, *ex dem.* Gosson *v.* Ladd *et al.*

*Ejectment by Remainder-men, against Purchasers from Trustee and Life-Tenants.*

1. *Trusts created by deed, for benefit of third persons; whether naked, or active; duration of trust estate.*—An assurance declaring a use, trust, or confidence in land, for the mere benefit of third persons, the trustee being the repository of a naked legal title, having no duties to perform, and subject to no accountability, vests the legal estate in the beneficiaries as if the conveyance were made directly to them (Code, § 2185); but, when a use is declared, or successive uses, which impose active duties on the trustee, in the control, management, or disposition of the property, a legal estate is vested in him commensurate with the scope and extent of the uses or trusts; which estate continues so long as there are any active duties to be performed, or any office in respect to the property to be fulfilled, and ceases with them when the purposes of the trust have been fully accomplished.

2. *Trust deed construed, as to estate of trustee, its duration and termi-*

| 77  | 223 |
| 96  | 166 |

| 77  | 223 |
| 104 | 365 |

| 77  | 223 |
| 118 | 291 |
| 118 | 293 |

| 77  | 223 |
| 120 | 251 |

| 77  | 223 |
| 141 | 515 |
| 142 | 343 |

[Doe, ex dem. Gosson v. Ladd.]

*nation.*—A deed by which the grantor covenanted to stand seized of certain property, real and personal, for uses and purposes as follows: 1st, the payment of all his debts and liabilities then existing; 2d, the joint use of himself and his wife, during their joint lives; one undivided half to be at all times at his sole disposal, and, on the death of his wife, one half of what then remained to be divided as follows—specified sums of money and slaves to be retained and held by him in trust for three grand-children of his wife, children of her three children by a former husband, and the residue of the one half, or its proceeds, to be divided equally among the three children, the interest, or use thereof only, to belong to them during their lives, and at their death to be divided among their children then living,—vests in him the legal title and sole use of one half of the estate, and the primary use of the whole for the payment of his debts; but, after his debts were paid, his active duties as trustee continued only during the lives of the children, who had an equitable life-estate; and on the death of two of the children, after the death of the wife, the trust ceased, and the legal estate in the shares of the deceased children then vested in their respective children, unless the remainder was cut off by a sale pursuant to the terms of the deed.

3. *Trustees appointed by court; extent of powers.*—In the exercise of its jurisdiction over trustees, their appointment and removal, a court of equity may invest its appointees with all the powers requisite for the discharge of the duties of the trust; but it can not confer upon them powers merely discretionary, or powers resting on personal trust and confidence, unless such powers are attached to the office of trustee, or are conferred by the instrument creating the trust on the acting trustee.

4. *Powers; when discretionary, and when imperative.*—A power is discretionary when it is not imperative, or, if imperative, when the time, manner or extent of its execution is left to the discretion of the trustee; and the courts will not, generally, compel the execution of a power which is discretionary, nor review an exercise of the discretion made in good faith; but, when the uses created are imperative, a power of sale conferred for their execution is equally imperative, when its exercise becomes necessary for their consummation.

5. *Deed contrued, as to power of sale conferred on trustee.*—In a deed by which the grantor covenants to stand seized of certain property, real and personal, for certain declared uses and purposes (namely, the payment of his debts, the joint use of himself and his wife during life, with further provisions for her children and grandchildren), a power of sale in these words: "And the said John P. N. shall at all times have the sole and absolute right to sell and dispose of the estate hereby conveyed to the uses aforesaid, and on giving adequate security to invest the proceeds according to the terms of this deed,"—does not repose on personal trust and confidence, but is attached to the office of trustee, and intended for the benefit of the trust estate; and it may be exercised by a subsequent trustee, appointed by a court of equity.

6. *Execution of power.*—The intention to execute a power must be manifested, either expressly, or by clear implication; but it may be manifested by an express reference to the instrument creating the power, or, without such reference, by a reference to the property which is the subject of the power; and where the act would be inoperative except as an execution of the power, and is not reasonably susceptible of any other other construction, it will be referred to the power.

7. *Same.*—A deed executed by the trustee in this case, both individually and as trustee, and in which the life-tenants joined, held to be an execution of the power of sale conferred by the instrument creating the trust; it appearing that the trustee had purchased an interest in the property, for the benefit of the trust estate, at a sale made by the register in chancery, and that the sale was confirmed to him as trustee, although the register's deed was made to him individually.

8. *Same ; presumptions in favor of, arising from lapse of time.*—After the lapse of thirty years (in this case), and uninterrupted possession by the purchaser, the court will make all reasonable presumptions in favor of a due execution of a power of sale, and of the regularity and validity of the conveyance to him, which is not set out, but is described as "sufficient in law to pass the estate and title of the grantors."

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action of ejectment, which was commenced on the 24th April, 1882, was brought by Silver M. Gosson and others, grandchildren and great-grandchildren of Mrs. Mary Nicholas, deceased, to recover certain real estate in the city of Mobile, which they claimed as remainder-men under a deed executed on the 26th May, 1836, by John P. Nicholas, then the husband of the said Mary Nicholas. Said deed was signed only by said John P. Nicholas, and attested by two witnesses ; but it purports on its face · to be executed by and between him and his said wife, as parties of the first part, and her three children by a former husband, John Baptiste Ramerez, Claudine Gosson and Caroline Martinez, as parties of the second part ; and the consideration is recited to be the natural love and affection of the parties of the first part, for the parties of the second part. By the terms of said deed, the said parties of the first part bargained, sold and conveyed, and acknowledged themselves to stand seized of the real property therein mentioned and described, which included the lands here sued for, and of certain slaves, "to and for the uses and purposes following—that is to say : *First*, to pay all the debts, dues and liabilities now owed by the said Nicholas. *Second*, to stand seized and possessed of the same to the joint use of the said parties of the first part, during their joint lives. *Third*, the one undivided half of the same at all times to be at the sole disposal of the said Nicholas. *Fourth*, in case of the death of the said Mary, then, after paying all the debts as aforesaid, the one half of what shall then remain shall be divided between the said parties of the second part, in manner following—that is to say : 1st. The said Nicholas shall retain and hold in trust for Louis Martinez, son of the said Caroline, one thousand dollars, and one of the said slaves, to be delivered to him when he arrives at the age of twenty-one years. 2d. That the said Nicholas shall retain and hold in trust for Engeline Gosson, daughter of the said Claudine, one thousand dollars in money and a negro woman ; and that the said Nicholas shall retain and hold in trust for Nicholas Ramerez, son of the said John Baptiste Romerez, a negro woman slave ; which shall all be held by the said Nicholas in trust, and for the benefit of the persons in this behalf named ; and in the event

[Doe, ex dem. Gosson v. Ladd.]

they, or each of them, shall die before they attain the age of twenty-one years, the respective portions to be divided between such of their brothers and sisters as shall be living at the time of his or her death; and if no such brothers and sisters living, then to the father or mother, if living, he or she being the child of the said Mary; and if none such, then to the next of kin of the said Mary Nicholas living at the time of such death; and the remainder of the said one-half of the said estate, or its proceeds, shall be equally divided between the said parties of the second part, and the interest, or use thereof only, appertain to them during their lives, and at their deaths to be divided between their several children who shall then be living, share and share alike. And the said John P. Nicholas shall at all times have the sole and absolute right to sell and dispose of the estate hereby conveyed to the uses aforesaid, and on giving adequate security to invest the proceeds according to the terms of this deed. And this deed may be revoked, by the joint consent of the said parties of the first part, in the event the said Mary shall recover from her present illness; and the said Nicholas shall and will, at a more convenient time, execute such conveyances and formal assurances as shall be deemed necessary to carry into effect the true intent and meaning of this instrument."

It seems that Mrs. Mary Nicholas died soon after the execution of this deed, though the record does not state the fact. It was proved that Caroline Martinez, one of the parties named in the deed, died in July, 1878, leaving an only son, who was one of the plaintiffs in the suit; and that Claudine Gosson died (at what time is not stated), leaving children and grandchildren, who were joined as plaintiffs; the plaintiffs thus appearing to be the living children of said Caroline and Claudine, and the children of their deceased children. The plaintiffs read in evidence on the trial, as the bill of exceptions states, "the record, proceedings and minute-entries had and made in a certain cause in the Chancery Court at Mobile, copies of which are hereto attached, and made part of this bill of exceptions;" but these papers were omitted by consent, and, instead thereof, these facts were admitted, as being shown by them: "Said bill was filed on the 21st July, 1836, by W. C. Matlock and Caroline, his wife (formerly Caroline Martinez), Claudine Gosson and her husband, Louis Martinez and Angeline Gosson (now Angeline Graham, one of the plaintiffs), for the purpose of establishing said deed of May 26, 1836, removing said Nicholas from the trusteeship thereby created, and the appointment of a new trustee, and for an account of the property held by said Nicholas under said deed. By the proceedings in said suit, said deed was established, said Nicholas was removed from the trust, and Louis Guerringer appointed trustee in his stead;

[Doe, ex dem. Gosson v. Ladd.]

and a decree was rendered against said Nicholas for a large amount of money, due by reason of his waste of the trust funds, and his undivided one-half in the property was condemned and subjected to the payment of said decree. The property was sold by the register, under this decree, on the first Monday in April, 1847, and was bought by said Guerringer; and the report of sale showed that the purchase was made by him as trustee, though the register's deed was made to him individually, without mentioning that he was trustee, and without in any way designating that he held the property conveyed to him as trustee. Said sale was duly confirmed by the court, by an order and decree rendered on the 12th April, 1847," which, after reciting that the register had filed his report of the sale, therein stating that, " at said sale, Louis Guerringer, trustee, became the purchaser for the sum of $660," of which sum, after deducting the costs, $565.15 remained to be applied to the satisfaction of complainants' decree, it was ordered and adjudged " that the same be in all things confirmed, and that the defendant's equity of redemption in and to said premises be forever barred and foreclosed, and that the purchaser be let into possession "

On the 28th March, 1838, said John P. Nicholas signed a *supersedeas* bond as surety for one Collins, who sued out a writ of error to the Supreme Court on a judgment which had been recovered against him ; and the judgment having been affirmed, an execution was regularly issued against the sureties on said bond, and was levied on the lands conveyed by said deed, as the property of said Nicholas. At the sale under the execution, Drury Thompson, Reuben A. Lewis and J. Eslava became the purchasers, and they received a deed from the sheriff, which was dated April 1st, 1844. Said purchasers then instituted actions of ejectment against said W. C. Matlock, Claudine Gosson, and other persons, who were in possession as their tenants ; and they recovered judgments in said actions, on which a writ of *hab. fac. poss.* was issued, and they were put in possession by the sheriff " in the latter part of 1844, or early part of 1845." There was proof, also, " tending to show that said Thompson, Lewis and Eslava continued in possession, claiming title against all persons, until they sold and conveyed to James H. Daughdrill, who continued in possession, claiming title against all persons, until they sold and conveyed to the several defendants."

" On the 13th April, 1848, while said chancery cause was still on the docket, said Guerringer filed a petition in said court, for an order to award a writ of possession, to turn said Thompson, Lewis and Eslava out of the possession of said lands, and to let him into the possession thereof ; and an answer to the petition was filed by said Thompson, Lewis and Eslava, setting

up their title to the whole of said land under said sheriff's deed, and their recovery of said lands by said judgments in ejectment, as above stated ; but said chancery cause does not show that any order was made on said petition and answer, or that any writ of possession issued thereon ; and said chancery cause was finally disposed of by an order made and entered on the 13th April, 1852," in these words :   " The continuance heretofore taken is set aside, and the matters in controversy in this cause having been settled by agreement- between the parties, it is ordered that the cause be stricken from the docket, and each party is ordered to pay his own costs ; for which execution may issue." The terms of this compromise are nowhere stated ; but, on the 30th January, 1852, a deed for the lands was executed to said Thompson, Lewis and Eslava, " by said Guerringer, individually, and as trustee for the parties therein named, and by said W. C. Matlock, Caroline (his wife), Claudine Gosson, Thomas Graham, Angelina Graham, and Louis Martinez ; said Angelina Graham being a daughter of said Caroline, and she and her husband (said Thomas Graham) being parties to this suit." This deed was offered in evidence by the defendants, and the bill of exceptions states that a copy of it is annexed as an exhibit ; but, by agreement entered of record, all the deeds and other exhibits are omitted from the transcript, and this admission is made in reference to them :   " It is admitted that the several deeds read in evidence by the defendants are, each and all, duly executed deeds of conveyance by the grantors therein, conveying the lands now sued for, and were all duly recorded within twelve months after their respective dates, and are sufficient in law to pass the estate and title of the grantors therein to the lands sued for."   The deeds executed by said Thompson, Lewis and Eslava, to James H. Daughdrill, were all executed subsequently to the date of said deed of January 30th, 1852.

Each of the defendants confessed lease, entry and ouster, as to the particular portion of land of which he was in possession, and entered a disclaimer as to the residue of the land sued for ; and each pleaded, as to his particular portion, not guilty, and adverse possession for thirty years.   On all the evidence adduced, the substance of which is stated above, the court charged the jury, on request, that they must find for the defendants, if they believed the evidence.   The plaintiffs excepted to this charge, and they now assign it as error.

G. L. SMITH, for appellants.—1. When the decree was rendered in the chancery suit against Nicholas, the charge then fastened upon the property, and the rights of the parties under

[Doe, ex dem. Gosson v. Ladd.]

the decree, dated back to the filing of the bill.—*Evans v. Welch*, 63 Ala. 256. The bill in chancery was pending when the execution against Nicholas was issued and levied, and when the debt was created on which that execution was founded; and the purchasers at the execution sale, obtaining their interest *pendente lite*, take it subject to the charge fastened on the property by the decree.—*Moon v. Crowder*, 72 Ala. 79; *Fash v. Ravesies*, 32 Ala. 451; *Chapman v. Gibbs*, 51 Ala. 502; *Peevey v. Cabaniss*, 70 Ala. 253.

2. The sale under the decree in chancery was made by the court, the register acting only as its agent. Guerringer purchased as trustee, and the sale was confirmed to him as trustee, the amount of his bid being credited on the decree in favor of the trust estate. Guerringer held only as trustee, and could only convey such title and interest as was vested in him in that capacity. By the terms of the deed of trust, Guerringer was trustee only of the life-estate, and the remainder was unincumbered by any trust.—*Schaffer v. Lavaretta*, 57 Ala. 14; *Comby v. McMichael*, 19 Ala. 570; *McBrayer v. Cariker*, 64 Ala. 50; *Greenwood v. Coleman*, 31 Ala. 153; *Grimball v. Patton*, 70 Ala. 626; *Bercy v. Lavaretta*, 63 Ala. 380; *Banks v. Jones*, 50 Ala. 480.

3. The sale and conveyance by the tenants for life, and by the trustee representing them, could have no effect on the title of the remainder-men; nor could it become adverse to them, until after the termination of the particular estate.—Code, § 2191; *Pope v. Pickett*, 66 Ala. 491; *Pickett v. Pope*, 74 Ala. 122; *Matthews v. McDade*, 72 Ala. 377; *Gilbert v. Pinson*, 57 Ala. 35; *Woodson v. Smith*, 1 Head, Tenn. 276; *Gibson v. Payne*, 37 Miss. 164; 4 Johns. 398; 40 Ill. 260; 10 Bosw. N. Y. 100. The action was brought within ten years after the termination of the life-estate.

4. The discretionary power of sale reserved to Nicholas by the deed, was a matter of personal trust and confidence, and did not pass to Guerringer, his successor by appointment of the court.—2 Perry on Trusts, § 499; 1 Sugden on Powers, 209, 211.

5. If Guerringer had such power of sale under the deed of Nicholas, it was not exercised by his conveyance in compromise of the pending suit, in which the life-tenants joined. All the facts negative the presumption invoked as arising from lapse of time, and show that the parties to the compromise intended to convey their own interest.

OVERALL & BESTOR, and L. H. FAITH, *contra*.—1. The deed of Nicholas did not create a dry and naked trust, but imposed active duties upon the trustee. He was required to sell the

[Doe, ex dem. Gosson v. Ladd.]

land, pay the debts of the grantor, and divide the proceeds among the tenants for life; and again, after their death, to divide the remainder among the contingent remainder-men. 2 Perry on Trusts, §§ 498, 766; Hill on Trustees, 471 ; *Zabriskie v. Railroad Co.*, 33 N. J. Eq. 22 ; *Hamilton v. Insurance Co.*, 3 Tenn. Ch. 124 ; *Kirkland v. Cox*, 94 Ill. 400 ; 2 Brick. Dig. 496. The active duties imposed on the trustee prevented the union of the legal and equitable title in the beneficiaries in remainder.— *You v. Flinn*, 34 Ala. 409 ; *Pittman v. Conniff*, 52 Ala. 83. The trust has not yet terminated, because Mrs. Angelina Graham, one of the life-tenants, is still living, and is joined as a plaintiff in the action.

2. The sale and conveyance by the trustee, during the continuance of his title and estate, discharged the land from the trust, and forever defeated the merger of the legal and equitable estate in the remainder-men.—*McBrayer v. Cariker*, 64 Ala. 50 ; *Matthews v. McDade*, 72 Ala. 377 ; Fearne on Remainders, 326. After the lapse of more than twenty years, during which period the purchaser has held continuous adverse possession under the conveyance of the trustee, all reasonable presumptions will be indulged in favor of the regularity of his action.—*Matthews v. McDade*, 72 Ala. 377.

3. Although the trustee may have had no power to sell, or his sale and conveyance may have been irregular, yet the plaintiffs are barred from a recovery by the statute of limitations and lapse of time.—*Molton v. Henderson*, 62 Ala. 432 ; *Clark v. Snodgrass*, 66 Ala. 243 ; *Smilie v. Biffle*, 2 Penn. St. 52 ; *Herndon v. Pratt*, 6 Jones Eq. 327 ; *Williams v. Otey*, 8 Humph. 563 ; *Woolridge v. Pl. Bank*, 1 Sneed, 297 ; *Long v. Cason*, 4 Rich. Eq. 60 ; *Bryan v. Weems*, 29 Ala. 423 ; *Fleming v. Gilmer*, 35 Ala. 66 ; 81 Ill. 436 ; *Hughes v. Farmer*, 58 Geo. 324 ; *Bright v. Bright*, 59 Tenn. 109 ; 5 Mo. App. 267 ; Tiff. & B. on Trusts, 619 ; Fearne on Remainders, 326.

CLOPTON, J.—An assurance, declaring a use, trust, or confidence of land, for the mere benefit of third persons—the trustee being the repository of a naked legal title, having no duties to perform, and subject to no accountability—vests the legal estate in the beneficiary, to the same extent as if the conveyance had been made directly to him. The legal and equitable estates are merged by the operation of the statute of uses, and no estate or interest vests in the trustee.— *You v. Flinn*, 34 Ala. 409. When a use, or successive uses are declared, which impose active duties on the trustee, in the control, management, or disposition of the trust property, or in other respects, a legal estate, commensurate with the scope and ex-

tent of the uses or trusts, is vested in the trustee. The extent and duration of his estate are determined by the object and extent of the trusts upon which the estate is given. It continues as long as there are any active duties to be performed, or any office in respect to the property to be fulfilled; but ceases on the cessation of the duties and office. When the purposes of the trusts have been fully accomplished, all having been done necessary to their complete execution, there no longer remains any trust; the estate of the trustee terminates, and the equitable estate of the beneficial owner, if in *esse*, is converted into a legal estate.—*Schaffer v. Lavaretta*, 57 Ala. 14; *McBrayer v. Cariker*, 64 Ala. 50; *Grimball v. Patton*, 70 Ala. 626; *Yarnell's Appeal*, 70 Penn. St. 335.

In 1 Perry on Trusts, § 320, the author observes: "Where an estate is given to trustees, and their heirs, in trust to pay the income to A. during her life, and at her decease to hold the same for the use of her children, or her heirs, or for the use of other persons named, the trust ceases upon the death of A., for the reason that it remains no longer an active trust; the statute of uses immediately executes the use in those who are limited to take it after the death of A., and the trustees cease to have anything in the estate,—not because the court has abridged their estate to the extent of the trust, but because, having the fee or legal estate, the statute of uses has executed it in the *cestui que trust*." The policy and purpose of the statute are to remedy the evil and inconvenience of a separation of the legal and equitable estates, and to consummate their merger, as soon as such union is practicable, consistently with the intention of the grantor, as expressed in the conveyance.

2. By the deed, Nicholas, the grantor, covenanted to stand seized of real and personal property for uses and purposes as follows: The payment of all debts and liabilities then owed by him; the joint use of himself and his wife, during their joint lives; one undivided half to be at all times at his sole disposal; and in the event of the death of his wife, one half of what shall then remain to be divided in manner following: specified sums of money and slaves to be retained and held by him in trust for designated individuals, and the *residuum* of the one half, or its proceeds, to be divided equally between three named children of his wife; the interest or use thereof only to appertain to them during their lives, and at their deaths to be divided between their several children who shall be then living. As to one half of the estate, the legal title and sole use were retained and reserved by the grantor, and the primary use of the whole was vested in him for the purpose of paying his debts and liabilities. After this was effected, other active duties were imposed on the trustee, which continued during the

[Doe, ex dem. Gosson v. Ladd.]

lives of the children, who had an equitable life-estate. The *corpus* of the estate remained vested in the trustee, the life-tenants being entitled only to the interest or use. But the active duties of the trustee continued only during the life-estates. When they fell, the trust fell with them. The trustee had no right or power to hold for the use of the remainder-men. As to them, he had no duties to perform, and no office to fulfill,—not even to convey. They were in by virtue of the deed.

It is insisted, that the statute can not operate until the death of all the life-tenants, and that one of them is still living. This is untenable. The deed contemplates and provides for a *division* between the life-tenants at the death of their mother, and after payment of his debts, so that each should take a separate portion ; and must be construed as if its provisions had been complied with. A failure in this respect can not change the legal effect of the deed. The wife of the grantor having died soon after the execution of the conveyance, on the death of two of the life-tenants, the legal estate in their several portions was vested in their respective children who were living, if nothing has occurred to cut off the remainder. The remainder-men were then ascertained, and the preservation of the trust was not necessary for this purpose.

3. The grantor, after the death of his wife, repudiated the trust, and asserted a hostile holding. Thereupon, the life-tenants brought their bill in the Chancery Court, to establish the trust deed, to remove him from the trusteeship, and to have a successor appointed. In the progress of the suit, a decree was made removing the grantor, and appointing a new trustee, with all the powers conferred by the deed, and with power to dispose of the property as the deed provides. A court of equity, though having jurisdiction to remove old, and appoint new trustees, can not confer on its appointees powers merely discretionary, or powers resting on personal trust and confidence, unless the deed creating the trusts confers them on the acting trustee, or they attach to the office; but the court may invest its appointees with all the powers requisite for the discharge of the duties of the trust.—Hill on Trusts, 316. Among the powers conferred by the deed is the following : "*And the said John P. Nicholas shall at all times have the sole and absolute right to sell and dispose of the estate hereby conveyed to the uses aforesaid, and on giving adequate security to invest the proceeds according to the terms of this deed.*"

4. A power is discretionary, when it is not imperative; or, if imperative, when the time, or manner, or extent of its execution is left to the discretion of the donee. Generally, the courts will not compel the execution of discretionary powers,

[Doe, ex dem. Gosson v. Ladd.]

nor review the discretion, when exercised in good faith. The nature and character of the uses created by the deed were such as to render the necessity of a sale probable, either for the payment of the debts of the grantor, or for a division, on the death of his wife, in the manner provided by the deed. Two thousand dollars in money, and specified personal property, were to be retained, in trust for certain beneficiaries, and the remainder of the estate, "*or its proceeds*" were to be equally divided between the life-tenants. To realize this money, or to make an equitable division of the *residuum*, a sale of the *corpus* of the estate might become necessary. If necessary for either purpose, a court of equity would compel the exercise of the power, on the refusal of the trustee to sell, or direct a sale. The uses created are imperative; and a power of sale conferred for the execution of the uses, where its exercise becomes necessary to their consummation, is equally imperative. It is appendant to, and an integral part of the trust. Perry says: "At the present day, a trust, that is, a power imperative, whether a bare power or a power coupled with an interest, would equally be carried into execution in courts of equity; for the maxim now is, that 'the trust or power imperative is the estate.' And it is well settled, that even in trusts reposed in trustees by name, the survivor, *if he takes the estate* with a duty annexed to it, can execute the power; and the rule of survivorship now applies not only to trusts, or powers imperative, which are construed as trusts, but also to such discretionary powers as are annexed to the office of trustee, and are intended to form an integral part of it."—2 Perry on Trusts, § 505. A power which survives by devolution of law, a court of equity may confer on new trustees.

5. It will be observed that the power of sale is not conferred upon a third person, but on the grantor himself, which has some significance in determining its character. The terms, "*the sole and absolute right*," were meant to exclude any inference of the right of the *cestuis que trust*, or any of them, to interfere, or direct, or control in any manner. If they are construed to intend that no other person, under any circumstances, shall have the power, and that it can not devolve on a succeeding trustee, in case of his death, resignation or removal, the prohibition would extend equally to the power "*to dispose of*" the estate in any manner; for "the sole and absolute right at all times" applies to the power to "dispose of," as well as the power to sell. The uses might be thereby embarrassingly obstructed, if not defeated. The power is qualified and explained by the words "*to the uses aforesaid;*" that is, the right to sell is conferred for the purpose of discharging and executing the uses created by the deed. No discretion or judgment

is authorized as to the manner of investing the proceeds. They are to be invested according to the terms of the deed, and to make this sure, adequate security is required. The idea of personal trust and confidence is excluded. It rather seems that the grantor, of course not doubting his own honesty, intended, by the requisition of precedent adequate security, to guard and protect the estate in the possession and under the control of a succeeding trustee, if there should be one. The power of sale does not repose on personal trust and confidence. Although conferred by name, it is annexed to the office of trustee.

6. The defendants claim under a sale and conveyance made by Guerringer, the substituted trustee, in January, 1852. It is insisted, that the sale and conveyance were not made in the execution of the power, and are not referable to it. The intention to execute a power, it is said, must be manifest, either expressly or by clear implication, but need not appear by express reference to the power. In *Blagge v. Miles* (1 Story, 426), Judge Story says: "Three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: (1.) Where there has been some reference in the will or other instrument to the power; (2.) Or a reference to the property, which is the subject on which it is to be executed; (3.) Or where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power." The transaction must not be reasonably susceptible of any other interpretation, than as an intended execution of the power.

7. The deed is not before us, and we have no means of ascertaining whether it does or does not contain an express reference to the power. It may be that we would, if necessary to sustain the rulings of the primary court, presume that it contained such reference. The record shows that the deed is in reference to the property, which is the subject on which the power is to be executed, and was executed by Guerringer individually and as *trustee*, and by the life-tenants. The half interest reserved by the grantor was sold in 1844 under execution, and purchased by the persons under whom the defendants claim. The same half interest was subsequently sold in 1847, by the register, under the decree of the Chancery Court, and purchased by the trustee, Guerringer, for the benefit of the trust estate. The sale was confirmed to him as trustee, but the deed by the register was made to him individually. Hence, due caution and protection required a deed from him, as an individual, and as trustee. As *trustee*, the deed is inoperative, except as an execution of the power. If not intended as an execution, why

was it made by Guerringer as *trustee*, and why did the life-tenants join in its execution?

When the bill was filed by the life-tenants, to establish the trust deed, and appoint a new trustee, the event had occurred, on the happening of which the deed required a division to be made. A controversy arose between the purchasers at the sheriff's sale, and the new trustee, as to the title and possession of the realty, which continued until a compromise was effected in 1852. It is contended that the sale and conveyance were made in the consummation of this compromise. Concede it. There is no charge of fraud, or collusion, or bad faith in the matter of the compromise, and it was recognized by the Chancery Court, which at that time had jurisdiction of the trust property. Under these circumstances, it must be presumed that the settlement of the pending and protracted litigation subserved the interests of the trust estate, and of the *cestuis que trust*. If a compromise of the controversy was necessary, to enable the trustee to discharge his duties, and to execute the uses, and a sale was necessary for this purpose, this is a circumstance,—an act,—showing an intention to execute the power.

8. The record recites, that the conveyance is sufficient in law to pass the *estate* and *title* of the grantors therein. The estate and title of Guerringer were what he acquired by virtue of the register's sale, and under the original deed by reason of his substitution as trustee. The conveyance by him was made in January, 1852. More than thirty years elapsed after the making of the conveyance, before the commencement of this suit; during all which time, the defendants and those under whom they claimed have been in open, notorious, and adverse possession, claiming title. The period of time had expired, after which it is the policy of the law to quiet past transactions, and when the courts will indulge for this purpose all reasonable presumptions. After such a lapse of time, and such uninterrupted possession, it is permissible to invoke the rule of presumption in favor of a due execution of the power of sale, and of the regularity and validity of a conveyance, sufficient in law to pass the estate and title of the grantor—*Matthews v. McDade*, 72 Ala. 377.

On the case made by the record, the remainder was cut off, and the legal title did not vest in the plaintiffs.

Affirmed.